Louisville, Cincinnati and Lexington Railroad Co. v. Goetz's adm'x.

CASE 90—ORDINARY—SEPTEMBER 13, 1881.

# Louisville, Cincinnati and Lexington Railroad Company v. Goetz's adm'x.

### APPEAL FROM KENTON CIRCUIT COURT.

1. To instruct the jury that "plaintiff's testimony shows that deceased was familiarly acquainted with the crossing and the time of the passing of trains, and it was his duty to have avoided being run against by defendant's train by keeping off the track at crossing-time, and if he failed so to avoid the train," &c., is error.

2. It interferes with the province of the jury.

3. It requires that all care and caution be exercised by the deceased, but none by appellant.

4. While it is the duty of persons crossing or attempting to cross a railroad track to exercise proper care and caution, it is also the duty of the employés of the railroad, or those in charge of the train, to exercise such care and precaution at such places as to prevent injury to those traveling on public highways.

5. The duty in this regard is reciprocal, and the court should have so instructed the jury.

BARNETT & NOBLE FOR APPELLANT.

1. The fact as to negligence is for the jury to decide. A scintilla of evidence is not sufficient to give a case to the jury. (47 Md., 76; 91 E. C. L. R. R., 146; Ib., 72; 5 Am. Rep., 251.)

2. Only ordinary care and diligence is required of a railroad company toward others than those in its charge. (47 Md., 76; 1 Exchequer, 13; Law R. C. P., 631; P. & M. R. R. Co. v. Hoel, 12 Bush, 41.)

3. It is the duty of every one about to cross a railroad track to approach it cautiously, and ascertain if there is danger. (87 Ills., 529; 22 Minn., 165; 12 Bush, 41; 58 Ills., 300; 63 Ib., 178; 73 Pa. St., 503; 25 Mich., 274; 4 Vroom, 189; 61 Pa. St., 361; 105 Mass., 77.)

W. E. ARTHUR AND STEVENSON & O'HARA FOR APPELLEE.

1. To authorize a peremptory instruction to the jury to find for the defendant, it must appear that, admitting the evidence to be true, the plaintiff has failed to support his cause of action. (L. C. & L. R. R. Co. v. Carr, 9 Bush, 734; 13 Ib., 643; Shay v. R. & L. T. P. Co., 1 Ib., 109; L. C. & L. R. R. Co., v. Mahoney, 7 Ib., 237; 2 Ib., 140; 18 B. Mon., 93; 2 Mon., 423; U. S. of Shakers v. Underwood, 11 Bush, 276; 2 B. Mon., 366; 17 B. Mon., 29; 20 N. Y., 65.)

2. The construction, condition, and contiguous territory with reference to the crossing are essential elements of proof upon the question

Louisville, Cincinnati and Lexington Railroad Co. v. Goetz's adm'x.

of negligence. (Claxton's adm'r v. Big Sandy R. R., 13 Bush, 643; 13 Bush, 389; P. & M. R. R. Co. v. Hoel, 12 *Ib.*, 44; 5 Otto, 162; Shearman & Redfield on Neg., 480–485; 20 N., 65; 19 Ills., 499; 47 Ills., 298; 29 Iowa, 55; 26 Ind., 76; 30 N. J. Law, 188.)

3. The instructions given for appellee are the law. (9 Bush, 737; 5 Otto, 164; 9 Bush, 732; 13 *Ib.*, 642; 6 *Ib.*, 578; 13 *Ib.*, 389; 14 *Ib.*, 523; 12 *Ib.*, 45; 2 Met., 149; 6 Bush, 380; 9 *Ib.*, 531; 10 *Ib.*, 680; *Ib.*, 273; 4 *Ib.*, 509; Gen. Stat., 521; 2 Duv., 559; 9 Bush, 733.)

4. The court properly refused the instruction asked for by appellee. (9 Bush, 734; 12 *Ib.*, 50; 5 Otto, 165; Civil Code, 327; L. & P. R. R. Co. v. Smith, 2 Duv., 559; *Ib.*, 115; 14 Bush, 524.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee's intestate, Michael Goetz, in attempting to cross the track of the Louisville, Cincinnati and Lexington Short-Line Railroad, at the intersection of that road with the Covington and Independence Turnpike, was run over and instantly killed by a train of cars owned and operated by the appellant.

The widow of the deceased, as his administratrix, instituted the present action under the statute, alleging that her husband lost his life by reason of the negligence, &c., of the employés of the appellant in running its trains, and recovered a judgment for $4,500 in damages, of which the appellant is complaining.

The testimony conduces to show that the traveler on the turnpike, on his way from Covington to Independence, the direction in which the deceased was going, is prevented from seeing the line of the railway or its trains as he approaches this crossing, by reason of an elevation or high ridge of ground that intervenes, until he reaches a point at or near the center of the railroad track. The intestate, a farmer about forty-three years of age, while driving his team from Covington to his home, in the county of Kenton, about seven o'clock in the evening, while crossing the railway at its intersection with the turnpike, was run over by

the cars, and found dead in a few moments afterwards a short distance from the crossing.    No one was with the deceased at the time of the accident, and the recovery in the court below was based principally on the statements of those in charge of the train at the time of the accident, and the ground of recovery is, "that the appellant or its employés failed to give the deceased sufficient warning of the approach of the train, and to use the necessary precaution to apprise those traveling on the turnpike of the danger in attempting to cross at this particular point in the road."

It further appears that the deceased was a careful, thrifty farmer, and familiar with the territory at and near the intersection of the roads, as well as the time the trains usually passed the point at which he was killed.

The train inflicting the injury was on its way from Louisville to Cincinnati, and a minute or two behind its regular time at this crossing.    It was running at a speed of thirty miles an hour, and from the statements made by the engineer in charge of the train, it is doubtful whether the deceased could have avoided the injury by the exercise of the utmost vigilance on his part, unless he had kept off the track of the railroad until the train passed.    This witness stated, on being interrogated by counsel for the appellant (the company), that when he blew the long whistle, which is the common signal for the approach of the train, he was only sixty or seventy yards from the crossing, or perhaps further; and being again interrogated, stated the train was three hundred yards distant from the intersection when the long whistle was sounded, and the bell was also rung by the fireman, and in this statement he is corroborated by the latter; that he was in forty feet of the intersection when he saw the horses upon the track, and then reversed the engine,

using every effort within his power to check the progress of the train.  The train at the time was on a down grade, with its speed, as the engineer states, increasing as it approached the turnpike, and it is manifest that no human effort could have prevented the misfortune after the horses had gotten on the track of the railroad and were in the act of crossing it. Numerous instructions were given at the conclusion of the testimony, and several instructions asked for by the appellant were refused.

We deem it necessary to consider only the principal instruction asked for by the appellant, as it is clear, if this instruction embodies the law of the case, the verdict should have been for the defendant.  The refusal, or giving of other instructions, did not prejudice the substantial rights of the parties, and besides, the special finding had, on motion of the appellant, shows that the jury passed upon the real issue, and could not have been misled by any instruction given or refused, except the instruction we propose to consider.

That instruction reads : "For the defendant, the jury are told that the plaintiff's testimony shows that the deceased was familiarly acquainted with the crossing and the time of the passing of the trains, and it was his duty to have avoided being run against by defendant's train, by keeping off the track at crossing time ; and if he failed so to avoid the train, and placed himself so close to the train as to put it out of the power of the defendant's employés to avoid injuring him, then the law is for the defendant." This instruction should have been refused for several reasons.

In the first place, it was the province of the jury to pass upon the facts evidencing the neglect of either party, and the court had no right to assume that the deceased was

acquainted with the road and its surroundings, or with the time that trains passed. Whether such facts had been established was with the jury and not the court, and particularly when the jury were told that the existence of such facts precluded a recovery.

The court, if the testimony showed negligence on the part of the deceased and not on the part of the company, might have instructed the jury to find for the defendant; but when the jury was left to determine the issue, the court should not have assumed that certain facts had been established conducing either to defeat or sustain the recovery. Again, the instruction requires that all the care and caution should have been exercised by the deceased, and none by the company; for if this instruction is the law, the presence of the deceased on the road is such evidence of negligence on his part as defeats the action.

If the right to the use of this crossing is not mutual, or the company has the exclusive right to its use, then the instruction would not be so objectionable. It is no response to a claim for damages in a case like this to say, that if the deceased had remained off the crossing until the train passed, he would have escaped injury, and his being on the crossing at the time the train passed is evidence of his neglect.

The right of the appellant to run its trains on the road at this point, and at any reasonable rate of speed, is unquestioned; but at the same time it is incumbent on the company and its employés, or those in charge of the train, to exercise such care and precaution as to prevent injuring those traveling on public highways at points crossing the track of its railway. It is not necessary or required of those in charge of the train to stop in order to see whether or not persons are approaching the crossing; but, on the

contrary, it has the right to pass, and those on the highway seeing or knowing of its approach, or when the proper and necessary signals have been given so as to notify them of the train's approach, they must yield the right of passage to the train. The great speed of the train, the necessities and safety of those on it, as well as the safety of the traveler on the ordinary highway, all require that this preference should be given; still it is the duty of those in charge of the train to give due and proper warning of its approach, that those crossing its track may know and avoid the danger; and when passing great thoroughfares thronged with travel, the speed of the train should be checked, or other means devised to insure the safety of those on the highway; and a failure to give such warning, or to use such precaution, must be regarded as negligence. (Paducah and Memphis Railroad Co. v. Hoehl, 12 Bush, 45; Clasdin's adm'r v. Lex. and Big Sandy Railroad, 13 Bush, 642; Lou. and Nash. Railroad v. Commonwealth, 389.)

While those on the highway, when about crossing a railroad track, must exercise proper diligence and care with reference to their own safety, where there is an absence of evidence as to the care exercised by the party injured, as in this case, it is not to be presumed that the deceased recklessly or carelessly imperiled his own life or entered upon the track of the road, knowing of the train's approach.

If the presumption of negligence arises from the mere fact that the deceased was killed on the track at a place where he had the right to be, it must necessarily defeat a recovery in all such cases, unless it should appear that those in charge of the train, after discovering the dangerous

condition of the party injured, could, by the exercise of ordinary care, have avoided inflicting the injury.

This doctrine might apply if the party injured was on the track of the railroad, where he had no right to be, but has no application to a case like this.

Counsel for the appellant have called the attention of the court to several cases in support of the instruction asked, and while they conduce to sustain the position taken, they cannot be reconciled with the adjudications of this court on similar questions.

The principal case is that of the Pennsylvania Railroad against Beal, 73 Penn. State Reports, in which it is said: "A prudent and careful man will always stop and listen for the approach of the train when about to cross its track. Indeed, the duty of stopping is more manifest when an approaching train cannot be seen or heard than where it can. If the view of the track is unobstructed, and no train is near or heard approaching, it might perhaps be asked, why stop? In such a case there is no danger of collision—none takes place, and the sooner the traveler is across the track the better. But the fact of collision shows the necessity there was of stopping, and therefore, in case of collision, the rule must be an unbending one."

The fact that the traveler failed to stop and listen before entering upon the track is made negligence *per se* by the cases cited, and in the case before us, because there is no evidence that he did stop and listen, we are asked to presume that he did not stop, and therefore his personal representative cannot recover. (Hanover Railroad v. Coyle, 5 P. F. Smith, 396.)

That a prudent man should use at least ordinary precaution to know whether a train is or not approaching, is evi-

dent; but if he fails to do so, or if there is no proof as to what care he did take before going upon the track, does this dispense with the necessity of those in charge of the train from giving the proper warning or using the proper care to prevent collision at such points on the road? We think not. It is evident if the party injured had not gone on the track, no collision would have taken place; but it by no means follows because he was killed at the crossing, a point where he had the right to travel, that he is guilty of such negligence as excuses the company for its neglect.

That the party injured may be guilty of such contributory negligence as to prevent a recovery is conceded; but in this case both parties had the right to the use of this part of the road for passing. This right was mutual, with the duty on the part of the deceased to exercise such caution as an ordinarily prudent man would under the circumstances; and the exemption of the appellant from all liability in the event it gave the proper warning of the approach of its trains, and the killing or injuring was unavoidable.

The same degree of care is required of both those in charge of the train and those traveling over a public highway crossing its track. The case of the Continental Improvement Co. v. Stead, reported in 5th Otto, page 163, embodies the law of this case. "Both parties," says the court in that case, "must exercise such care as men of common prudence and intelligence would ordinarily use under such circumstances. When the view is obstructed so that parties crossing the railroad would not see an approaching train, the exercise of greater care and caution was required on both sides. Those in charge of the train should approach

the crossing at a less rate of speed, and use increased diligence to give warning of its approach."

The question of negligence was properly left to the jury, and by a special finding, made at the instance of the defendant, the jury said: " *The negligence consisted in the running of the train at too great a speed in its approach to the turnpike, and in not giving the proper precaution, and in not having a flagman at the crossing."*   Under this special finding, the only question really to be considered is, did the evidence authorize the conclusion reached by the jury?

· The turnpike on which the accident took place is one of the most important highways in that portion of the state, leading directly from the city of Covington; it is constantly thronged by travelers, and a greater degree of care and caution should be exercised than at ordinary crossings.   The usual whistle, if made in reasonable time, so as to give the warning, would ordinarily be sufficient; but the point at which the accident occurred in this case is within six miles of the city of Covington, and a stream of travel over the turnpike that is common in such approaches to the larger cities of the state.

The train in this instance crossed the turnpike on a descending grade, with an increased rate of speed, running thirty miles or more an hour, with no other signal or warning than a whistle within seventy yards, or at best within three hundred yards of the crossing, to warn those traveling on the turnpike of its approach.   This is itself culpable negligence, and renders any approach to the railroad on such a thoroughfare dangerous to all passing over it. Running a train at such speed over the streets of a small village would be attended with little more danger.   It being the duty of those on the highway to look and listen for

the approach of the train, it is equally the duty of those in charge of the train to give sufficient warning of its coming; and on such a thoroughfare as this turnpike is shown to be, to lessen the momentum of the train, as well as to provide other means to insure the safety of those traveling the highway, as well as those on board the train.

As said in the case cited, "if an unslackened speed is desirable, watchmen should be stationed at the crossing." The traveler is required to stop so that the trains may pass; but this is conditioned upon the train giving due and timely warning of its approach. "The duty of the wagon to yield precedence is based upon this condition." The blowing of the whistle three hundred yards from such a crossing, and *running with the speed of the train in this case*, is not a sufficient warning, and the facts authorize both the special and general finding. The judgment is affirmed.