Louisville & Nashville Railroad Co. v. Clark's Admr.

---

CASE 70—ACTION FOR INJURY CAUSING DEATH—FEB. 7.

# Louisville & Nashville Railroad Co. v. Clark's Administrator.

APPEAL FROM HARDIN CIRCUIT COURT.

<table>
<tr><td>105</td><td>571</td></tr>
<tr><td>111</td><td>738</td></tr>
<tr><td>105</td><td>571</td></tr>
<tr><td>118</td><td>274</td></tr>
<tr><td>105</td><td>571</td></tr>
<tr><td>135</td><td>237</td></tr>
<tr><td>135</td><td>246</td></tr>
<tr><td>136</td><td>612</td></tr>
</table>

1. NEGLIGENCE—PEREMPTORY INSTRUCTION.—A peremptory instruction is properly denied when the inferences of negligence to be deduced from proved or admitted facts are such as the jury might fairly differ about.

2. SAME—INSTRUCTIONS.—An instruction that "If the jury believe from the evidence that plaintiff's intestate saw or heard or could, by the exercise of ordinary care, have seen or heard the approaching train before he was upon the track, it was want

of ordinary care upon his part to go upon the track in front of said train," was properly denied because it assumed that certain facts had been established and ignored defendant's negligence as a factor in the result.

3. SAME. NEGLIGENCE NOT ALLEGED—FAILURE TO ERECT SIGNBOARDS. —It was error to give an instruction predicated on the defendant's failure to erect signboards at the crossing in the absence of any allegation in the petition of such failure and that it tended to cause the injury complained of.

4. SAME.—It was error to instruct the jury "that if they believed from the preponderance of the evidence that the killing of deceased was caused by the negligence of defendant's servants in charge of its train in failing to do any duty they were required to do, if they did so fail, or by reason of the failure of defendant to keep its track clear of obstructions or to remove the timber or brush or other obstructions along its track, if it did so fail in any of these matters, they should find for the plaintiff unless they believed from the evidence that the deceased was guilty of such contributory negligence as caused his own death, as set out in the sixth instruction." (1) Because it was too indefinite in defining the duty required of defendant, and (2) because by these words the jury were told that the contributory negligence of deceased must have been such as to wholly cause his own death.

5. SAME.—The words "greater care" as used in instruction sixteen were too indefinite to prescribe a standard of care.

6. MEASURE OF DAMAGES.—It was error to instruct the jury that the measure of damages was "such a sum as, in the opinion of the jury, from the evidence, deceased would have earned during the remainder of his life, if he had been permitted to live until he died of natural causes, considering his physical condition and power and ability to earn money at the time of his death." In an action for death the measure of damages is "such a sum as will compensate the estate of deceased for the destruction of his power to earn money."

W. H. MARRIOTT, FOR THE APPELLANT. (H. W. BRUCE OF COUNSEL).

1. The evidence failed to show appellant's negligence in failing to give the proper signal as it appoached the crossing where the accident occurred.

Louisville & Nashville Railroad Co. v. Clark's Admr.

2. The proof showed contributory negligence on the part of the plaintiff's decedent. Durbin v. Oregon R. R. & Nav. Co., 11 Am. St. Rep., 778; Cooley on Torts, pp. 679-80; Schofield v. Chicago M. & St. P. R. R. Co., 19 Am. & Eng. Ry. Cases, 353; 114 U. S., 615; Shearman & Redfield on Neg., secs. 90, 112; Ray on Neg. of Imposed Duties, p. 688; Wilcox v. Rome,·&c., R. R. Co., 100 Am. Dec., 440; Brooks v.'Niagara Falls, &c., R. R. Co., 25 Barb., 600; Becht v. Corbin, 92 N. Y., 658; Mitchell's Admr. v. N. Y. Cent. & H. R. R. Co., 64 N. Y., 655; Connelly's Admr. v. N. Y. Cent. & H. R. R. Co., 88 N. Y., ——; Brown's Admr. v. Milwaukee & St. P. R. R. Co., 22 Minn., 165; Wright v. C., N. O. & T. P. Ry. Co., 94 Ky., 114.

3. The verdict was excessive. The opinions of witnesses as to decedent's earnings were incompetent. Eskridge's Exrs. v. Cin., &c., R. R. Co., 89 Ky., 367.

4. The court erred to the defendant's prejudice in its definition of contributory negligence. Avery & Sons v. Meek, 14 Ky. Law Rep., 814; and the error was not corrected by the other instructions. Clay's Heirs v. Miller, 3 Mon., 149.

5. It was error for the court to instruct the jury that it was the duty of defendant to erect and maintain certain signboards at the crossing. No such negligence was alleged in the petition as the cause of plaintiff's decedent's death. Hass' Admr. v. G. W. & I. R. R. Co., 8 Am. & Eng. Ry. Cases, 268; 47 Mich., 401; McCain v. L. & N. R. R. Co., 13 Ky. Law Rep., 809; Cin. & Cov. Bridge Co. v. Brennan, by, &c., 16 Ky. Law Rep., 126; Gividen's Admr. v. L. & N. R. R. Co., 32 S. W. R., 612.

6. The court erred in refusing to give instruction D, that if the view of the track was obstructed, it was the duty of the decedent to use ordinary care to place himself in such a position as to receive the benefit of the sense of hearing. Mantel v. Chicago, M. & St. P. R. R. Co., 19 Am. & Eng. Ry. Cases, 364; Funston v. Chicago, &c., R. R. Co., 14 Am. & Eng. Ry. Cases, 645; Schaefert v. Chicago, M. & St. P. R. R. Co., 14 Am. & Eng. Ry. Cases, 696; Tucker v. Duncan, 6 Am. & Eng. Ry. Cases, 272.

EDWARD W. HINES, IN A SUPPLEMENTAL BRIEF FOR THE APPELLANT. (W. H. MARRIOTT OF COUNSEL).

The court erred in instruction 19 in defining the measure of damages. C. & O. Ry. Co. v. Lang's Admr., 19 Ky. Law Rep., 68; L. & N. R. R. Co. v. Kelly, *Idem*, 79.

W. H. MARRIOTT FOR THE APPELLANT IN AN ADDITIONAL BRIEF.

Additional citations: C., N. O. & T. P. R. R. Co. v. Thierman, 15 Ky. Law Rep., 655; Howes v. C., N. O. & T. P. R. R. Co., 13 *Idem*, 72.

S. M. PAYTON, FOR THE APPELLEE.

1. It is the duty of those in charge of a train to watch with vigilance for those who may be in the vicinity of points where the public have a right to cross the track, and if one could have been discovered by the exercise of reasonable care, but was not, and is injured, the company is liable whether the signal was given or not. L. & N. R. R. Co. v. Schuster, 10 Ky. Law Rep., 65.

2. The duty of vigilance at public crossings is a mutual and reciprocal one, and rests equally upon those in charge of the train and the traveler upon the highway to exercise caution commensurate with the dangers of the situation. Beyel v. Newport N. & M. V. Co., vol. 45, Am. & Eng. Ry. Cases, 188.

3. It is the imperative duty of a railway company to maintain its right of way free from obstructions reasonably calculated to obstruct the view of the track from the engineer while running the train. L. & N. R. R. Co. v. Ritter's Admr., 9 Ky. Law Rep., 22.

4. Where the obstructions are permitted to be upon the right of way near a public crossing, merely giving the statutory signals of approach will not be held an exoneration from liability for an injury occurring at such crossing. N. Y. Ry. Co., v. Randel, vol. 23 Am. & Eng. Ry. Cases, 308.

5. It is the duty of a railway to construct and maintain public crossings and their approaches so that they can be used in safety, and a failure to do so is negligence. Terre Haute & I. Ry. Co. v. Clem, vol. 42, Am. & Eng. Ry. Cases, 101; Hannibal & St. J. Ry. Co. v. Bloom, vol. 42, Am. & Eng. Ry. Cases, 87.

6. It is the duty of a railway company to ring its bell or blow its whistle continuously or alternately when within fifty rods of a public crossing until it is reached by the engine, and a failure to do so resulting in injury renders the company liable for all damages resulting. Ky. Stats., secs. 786, 793.

7. To blow two long blasts and two short ones when within fifty rods of a public crossing, and then ring the bell continuously until the crossing is reached by the engine is not a compliance

Louisville & Nashville Railroad Co. v. Clark's Admr.

with the spirit and intent of the statute.   The signal must be
given so as to be most effective, and both must be used.   Bales
v. N. Y. & N. E. Ry. Co., vol. 49, Am. & Eng. Ry. Cases, 473.

8. The signal must be given at the point designated in the statute,
   not so far away as not to be heard or confounded with a
   signal for some other place, or so near by as not to afford op-
   portunity to avoid danger.   Bailey v. Hartford & C. V. Co., vol.
   37, Am. & Eng. Ry. Cases, 483.

9. To instruct that "it is want of ordinary care to go upon the track
   in front of an approaching train, if deceased saw or heard, or
   could have seen or heard the train in the exercise of ordinary
   care," would be an invasion of the province of the jury, both
   in the assumption of fact and the decision of the question of
   care or its absence.   Grand Trunk Ry. Co. v. Ives, Book 36
   (U. S.) Lawyers' Edition, 489.

10. To have instructed the jury that "it was the duty of plaintiff's
    intestate, before going upon the defendant's track, to look
    and listen for the approach of the train," would have been an
    assumption that plaintiff's intestate did not do so, which the
    court could not make.   Grand Trunk Ry. v. Ives, U. S., Book
    36, p. 489, Lawyers' Ed.; Eskridge's Exr. v. C., N. O. & T. P.
    Ry. Co., 11 Ky. Law Rep., 557; Cahill, Admr., v. C., N. O. & T.
    P. Ry. Co., 13 Ky. Law Rep., 714.

11. A verdict of $10,000 for killing a man through gross negli-
    gence, who is thirty-seven years of age, in good health, strong
    and active, careful, prudent, and industrious, and earning $500
    per year, is not an excessive finding, if considered as com-
    pensation merely.   L. & N. R. R. Co. v. Shivell, Admx., 13 Ky.
    Law Rep., 902; L. & N. R. R. Co. v. Kelly, *supra;* Ky Cent.
    Ry. Co. v. Smith, 14 Ky. Law Rep., 455; Ky. Cent. Ry Co. v.
    Ryle, 13 Ky. Law Rep., 862; L. & N. R. R. Co. v. Popp, 16 Ky.
    Law Rep., 369; L. & N. R. R. Co. v. Greer, 16 Ky. Law Rep.,
    667; L. & N. R. R. Co. v. Mitchell, 10 Ky Law Rep., 211.

12. An exception to the answer of a witness, if the question elic-
    iting it was not objected to before the answer was given, is
    unavailing.   Civil Code, sec. 333, sub-sec. 3; Loving v. Warren
    County, 14 Bush, 320.

13. An explanatory instruction as to a duty of a railway company,
    although its non-performance is not declared on in the peti-
    tion, is not prejudicial, if the jury be not directed to find for
    its non-performance of such duty.   L. & N. R. R. Co. v.
    Mitchell, 10 Ky. Law Rep., 217.

14. It is the duty of a railway company to give the statutory signals, reduce speed, and approach a dangerous and much-used public crossing in the country with care and caution, as well as at street crossings in a city. L. C. & L. Co. v. Goetz's Admx., 79 Ky., 447; N. N. & M. V. Co. v. Stuart's Admr., 18 Ky. Law Rep., 347.

WM. S. PRYOR IN A SUPPLEMENTAL BRIEF FOR THE APPELLEE. S. M. PAYTON, OF COUNSEL).

1. There is no presumption of negligence on the part of the plaintiff's decedent from the mere fact of death. Goetz's Admx. v. L. C. & St. L. Co., 79 Ky., 447; Elliott on Railroads, vol. 3, sec. 1163; Wright v. Railroad Co., 94 Ky., 114. The rule of contributory negligence was, therefore, a question of fact to be submitted to the jury. Wilcox v. Rome, &c., 100 Am. Dec., 140.

WM. H. HOLT, FOR THE APPELLEE, IN AN ADDITIONAL BRIEF.

1. Contributory negligence was not proven.
2. On the measure of damages. 15 Am. & Eng. Ency. of Law, p. 724; L. & N. R. R. Co. v. Morris, Admx., 14 Ky. Law Rep., 466; C. & O. Ry. Co. v. Lang's Admr., 19 Ky. Law Rep., 65; L. & N. R. R. Co. v. Kelly's Admr., 19 Ky. Law Rep., 69.

W. H. MARRIOTT FOR THE APPELLANT IN A PETITION FOR A MODIFICATION OF THE OPINION. (H. W. BRUCE AND EDWARD W. HINES OF COUNSEL).

1. In the instruction asked by us and refused no fact was assumed to have been established.
2. It did not require all care and caution should have been exercised by the deceased, it relieved the railroad company of no duty imposed upon it by the other instructions given by the court, and merely told the jury that if they believed from the evidence certain facts were true, this amounted to want of care on Clark's part.
3. It was Clark's duty before going upon the railroad track to both look and listen for an approaching train, and if he failed to do this, it was negligence on his part.
4. If it were admitted or affirmatively proven that he failed to do this, it would be the duty of the court to tell the jury that this was negligence on his part, and instruct them to find for the defendant.
5. It was competent for the railroad company to introduce evi-

dence tending to show that Clark could have seen or heard the train before going upon the track by the exercise of ordinary care.

6. Having introduced such evidence it was the duty of the court to tell the jury that if they believed from the evidence, Clark saw or heard the train, or could, by the exercise of ordinary care, have seen or heard it before he went upon the track, this was negligence on his part.

7. Unless the jury are told in plain words the legal effect of such conduct, they can not know that it amounts to negligence, and may have assumed that the failure by the court to so tell them was because it had no such effect.

EDWARD W. HINES, FOR THE APPELLANT, IN A SUPPLEMENTAL PETITION FOR A MODIFICATION OF THE OPINION.

Citations: Rupard, &c. v. C. & O. Ry. Co., 88 Ky., 280; Louisville, &c., R. R. Co. v. Goetz's Adm., 79 Ky., 445.

W. S. PRYOR FOR THE APPELLEE IN RESPONSE TO A PETITION FOR A MODIFICATION OF THE OPINION.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment in favor of appellee, as administrator of W. J. Clark, against appellant, for $10,000 in damages for the loss of intestate's life.

The petition, in substance, alleges that decedent was killed by one of defendant's south-bound freight trains at the point where a public road, known as the "Leitchfield Road," in Hardin county, crosses defendant's track. It is charged that this crossing is specially dangerous by reason of "an embankment and other obstructions" standing on defendant's right of way, which prevented plaintiff's intestate from observing the approach of the train before he attempted to cross the track, and that defendant's agents failed to give warning of the approach thereof, either by ringing of the bell or blowing of the whistle, as required by law.

All the material allegations of the petition as

[ 37 ]

amended were denied by the answer, and the defendant charged that plaintiff's intestate was guilty of such contributory negligence in causing the accident which led to his death as prevents recovery.

The testimony for appellee, as to the failure of appellant's servants to blow the whistle and ring the bell as they approached this crossing, is confined to witnesses who, at the time of the killing, were located at a considerable distance from the actual place of the accident; and they all testify, in substance, that they did not hear any bell rung or whistle sounded as the train approached the crossing, their attention being first directed thereto after it had passed beyond the crossing by the signals to stop the train and back up. And there is a good deal of testimony to the effect that the crossing was an unusually dangerous one, from the fact that the approach of the train was to some extent obscured by a long cut north of the crossing, and by the further fact that in the original construction of the road a part of the earth excavated from the cut had been thrown upon the right of way adjacent to the excavation and allowed to remain there; and there is some testimony to the effect that at the time of the injury this embankment was covered with high weeds, bushes, and briers, which materially obstructed the view of the approaching trains from travelers upon the highway, and that the corn growing upon the adjacent land also aided in obstructing the view of such travelers. The evidence tends to show that the cut and embankment together was about five feet high 200 feet north of the crossing, and gradually slopes to grade as it is approached, being only 2 feet 3 inches fifty feet away.

No witness was introduced for appellee who saw the accident, or saw the deceased as he approached the crossing.

whilst the engineer, fireman, and brakeman in charge of the train that killed him all testify that the usual signals were given for the crossing, by blowing the whistle and ringing the bell; and there was also testimony for appellant that there were no weeds, bushes, or other obstructions on the right of way sufficient to prevent travelers from seeing an approaching train; that the main obstruction was the corn, heretofore referred to, and the cut through which the train passed. Two of these witnesses testified that they had made experiments to ascertain whether a person, sitting in an ordinary road wagon, could see a train coming from the north before his team got on the track; and that they found, when the tongue of the wagon got within sixteen feet of the nearest rail, he could see the smokestack of an approaching locomotive for more than five hundred feet north of the crossing, and that when the head of his horses got within six feet of the track he could see for more than a thousand feet down the track; and this testimony is corroborated by a number of other witnesses.

Deceased was a tenant on a farm about five miles from Elizabethtown, and in making the trip from his home to town he habitually traveled the Leitchfield road. On the day of the accident which resulted in his death, he had been to town to deliver a load of wheat, and had started back for another load, and was driving an empty wagon drawn by two mules. Before he reached the crossing he was compelled, on account of a rain storm which came up suddenly, to stop in a barn on the side of the road. Frank Brown—who was also driving a wagon in the same direction, and who sought shelter from the rain in another barn farther from the railroad than that in which Clark took shelter—

testifies that deceased "passed him in a trot before he [Brown] stopped in out of the rain;" whilst one Thomas Weatherly, who is the only witness who testifies to seeing Clark after he left his place of shelter after the rain, testifies that when he last saw him he "was within fifty feet of the railroad crossing, driving at a pretty rapid rate." The fireman on appellant's train testifies that he first discovered decedent crossing the railroad track "at a run when the train was within thirty to sixty feet of the crossing."

There is no evidence that the collision could have been averted by any act of the agents of the defendant.

Under this state of proof, appellant's counsel moved for a peremptory instruction, which the court refused to give, and this is the first ground relied on for reversal.

It is the general rule that questions of fact are to be submitted to the jury, and this includes, not only cases where the facts are in dispute, but also those where the question is as to the inference to be drawn from such facts after they have been determined. In this case plaintiff's intestate is not here to testify, and there is an absence of evidence as to the care exercised by him in attempting to cross defendant's track; but it can not be presumed that deceased recklessly or carelessly imperiled his own life or entered upon the track knowing of the train's approach. "If the presumption of negligence arises from the mere fact that deceased was killed on the track at a place where he had a right to be, it must necessarily defeat recovery in all such cases, unless it appear that those in charge of the train, after discovering the dangerous condition of the parties injured, could, by the exercise of ordinary care, have avoided inflicting the injury." See L., C. & L. R. R. Co. v. Goetz's Adm'x, 79 Ky., 447, [42 Am.

Rep., 227]. This doctrine might apply if the party injured was on the track where he had no right to be, but has no application to a case like this, where the accident occurred at the crossing of a public highway.

Appellant asked the court to give the following instruction, which was refused: "If the jury believe from the evidence that plaintiff's intestate saw or heard, or could by the exercise of ordinary care have seen or heard the approaching train before he was upon the track, it was want of ordinary care upon his part to go upon the track in front of said train."

"A traveler approaching a railroad track crossing a highway is bound to exercise ordinary prudence,—such prudence as is fairly commensurate with the nature of the risk. . . . No man has a right to depend entirely on the care and prudence of others. He is bound himself to exercise due care to prevent injury to himself from the lack of proper caution in others. He is bound to take such measures as common prudence, in view of the danger and consequences of neglect to do so, suggests." See 2 Wood on Railroads, p. 1520. "From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it can not be expected that it shall stop and give precedence to an approaching wagon to make the crossing first. It is the duty of the wagon to wait for the train. The train has the preference and the right of way, but it is bound to give due warning of its approach, so that the wagon can stop and allow it to pass, and use every exertion to stop if the wagon is inevitably in the way; but such warnings must be reasonable and timely." See Continental Improvement Co. v. Stead, 95 U. S., 161, and L., C. & L. R. R. Co. v. Goetz's Adm'x, *supra.* Section 786 of the Kentucky Statutes re-

quires that "every railroad company shall provide each locomotive passing upon its road with a bell of ordinary size, and steam whistle and such bell shall be rung or whistle sounded, outside of incorporated cities and towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing." "And the rate of speed of a train must be such that, together with the warning signals given, travelers near or on the crossing may have reasonable time to avoid danger. This does not require that there should be a material reduction in the rate of speed on approaching every highway crossing, as such requirement would prove a most serious hindrance to rapid transportation, which is the chief object of railroads; but it does require that the speed shall not be so great as to render the precautionary signals unavailing, particularly where the view of the track is unobstructed." See 2 Wood on Railroads, p. 512, and authorities there cited.

The proof in this case shows that the train was traveling at the usual rate of speed, and it was the duty of the deceased in approaching the crossing, to use that degree of care which is dictated by common prudence, in view of the peril to which he may have been exposed.

We think the instruction asked was properly refused, because it assumed that certain facts had been established, and required that all the care and caution should have been exercised by the deceased. A similar instruction was passed upon by this court in L., C. & L. R. R. Co. v. Goetz's Adm'x, *supra*.

By the tenth instruction the court told the jury that it was the duty of the defendant to erect and maintain certain signboards at the crossing, so as to give notice to

persons traveling on the highway that they were approaching a railroad track. There was no averment in the petition that defendant failed to perform this duty, or that the injury was caused by such failure on its part. When a plaintiff sets out in his petition certain specified acts of negligence for which he seeks to recover, he can not prove or rely upon different acts of negligence. Defendant could not have anticipated that such an issue as this was to be made on the trial, or be prepared to rebut any imputation of negligence which might arise from such failure. If it had been alleged as a ground of negligence, defendant would have had the right to controvert it, and might had been able to prove that the signboards had in fact been erected. To keep such signboards at railroad crossings is a statutory requirement, and the failure to observe this requirement would have been an act of negligence. It seems to us that the instruction was clearly erroneous and prejudicial. See McCain v. L. & N. R. R. Co., 13 Ky. Law Rep., 809 [18 S. W., 537]; Cin. & Cov. Bridge Co. v. Brennan, 16 Ky. Law Rep., 126; Gividen's Admr. v. L. & N. R. R. Co. (Ky.), [32 S. W., 612].

By the twelfth instruction the jury were told "that if they believed, from the preponderance of the evidence, that the killing of deceased was caused by the negligence of defendant's servants in charge of its train, *in failing to do any duty they were required to do,* if they did so fail, or by reason of the failure of defendant to keep its track clear of obstructions, or to remove the timber or brush or other obstructions along its track, if it did so fail in any of these matters, they should find for the plaintiff, unless they believe from the evidence that the deceased was guilty of such contributory negligence as caused his own death, as set out in the sixth instruction." This in-

struction was erroneous and prejudicial to defendant in two particulars: First, in telling the jury that defendant was liable "if its servants in charge of its train failed to do any duty they were required to do." These words are vague and indefinite, and leave the jury to speculate as to their meaning and the duty of defendant's servants in approaching a dangerous crossing. Under them, the jury might well have concluded that, in addition to the signals required by the statute, it was the duty of defendant to slacken speed of its train on coming to the crossing, or to do something additional, which, in the judgment of the jury, was a part of its duty. The statute imposes upon those in charge of a train the duty of blowing its whistle and ringing its bell at a distance of fifty rods before a crossing is reached; and, whilst there may be circumstances and conditions under which these statutory regulations would not be the limit of the duty of those in charge of trains in approaching a dangerous public crossing, yet, if the conditions actually required greater and additional precautions than those imposed by the statute, it was the duty of the court, in terms, to point out in what this additional duty consisted. And the closing words of the instruction, "unless they believe from the evidence that the deceased was guilty of such contributory negligence as caused his own death, as set out in the sixth instruction," were misleading. By these words the jury were told that the contributory negligence of deceased must have been such as to *wholly* cause his own death. In Avery & Sons v. Meek, 14 Ky. Law Rep., 814, the Superior Court said: "It was an error to require the jury to believe, in order to find for the defendant on the ground of plaintiff's contributory negligence, that the injury was caused by the plaintiff's negligence, as this required them to believe that it was caused

*wholly* by the plaintiff's negligence. Although the consequence of contributory negligence on plaintiff's part was declared in other instructions, this did not cure the error." See, also, Speed v. Carpenter, 14 Ky. Law Rep., 271, and Cent. Pass. Ry. Co. v. Chatterson, 14 Ky. Law Rep., 633.

We think the words "greater care," used in the sixteenth instruction, taken in the connection in which they are used, are objectionable, because they are too broad and indefinite. What the "greater care" consisted in ought to have been specifically set out. In approaching a dangerous public crossing, it is the duty of those in charge of a train to keep a more careful lookout, and give the signals required by the statute.

By instruction 19, the jury were told "to find for plaintiff such a sum as in the opinion of the jury, from the evidence, deceased would have earned during the remainder of his life if he had been permitted to live until he died of natural causes, considering his physical condition and power and ability to earn money at the time of his death." This court has often said that the measure of recovery in an action of this kind is such a sum as will compensate the estate of deceased for the destruction of his power to earn money. See L., C. & L. R. R. Co. v. Case's Admr., 9 Bush, 736; C. & O. R. R. Co. v. Lang's Admr., 19 Ky. Law Rep., 68 [41 S. W., 271]; L. & N. R. R. Co. v. Kelly's Admr., 19 Ky. Law Rep., 79 [38 S. W., 852]; L. & N. R. R. Co. v. Eakin's Admr., 20 Ky. Law Rep., 933 [45 S. W., 529]. The instruction in this case takes from the consideration of the jury all questions of this kind, and tells them that they should find *such a sum as in the opinion of the jury, from the evidence, deceased would have earned during the remainder of his life.* And the use of the words, "if he had been permitted to live until he died of natural causes, considering his

physical condition," etc., is also objectionable, as they exclude from the consideration of the jury death from any *but* natural causes.    Under this instruction they might conclude that only death from old age is death from natural causes, and make a guess as to how long a robust man of the age of deceased would probably live, disregarding altogether the possibility of his death from accidental causes and the evidence as to his expectation of life.    This instruction was misleading and prejudicial to defendant.

Quite a number of other errors are complained of by appellant, which it is unnecessary to consider; but for the errors pointed out the judgment is reversed, and the cause remanded for proceedings consistent with this opinion.