## Barker v. Louisville & N. R. Co.

Jan. 30, 1942.

C. R. Luker and Begley & Begley for appellant.

William Lewis & Son, C. S. Landrum and H. T. Lively for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

About six o'clock in the morning of Monday, March 27, 1939, remnants of the body of Roy Barker were found strewn along appellee's railroad right of way at varying distances north of Bryant's crossing approximately one mile north of Lily, an unincorporated village in Laurel County. Some small particles of flesh were found under a wooden guide rail, and blood stains were seen on other portions of the crossing, which, together with the disturbed condition of the gravel south of it, indicated that the dismemberment may have occurred south of the crossing. The railroad at this point was double-tracked, and, from the evidence as a whole, it may be assumed that Barker was struck and killed, as contended by appellant, by one of appellee's northbound trains at a point where the east track intersected the roadway of which the crossing formed a part. This roadway extended

westwardly from State Highway No. 25, and was used as a means of entering and leaving the village. The track was straight for several hundred yards north and south of the crossing; and there was some evidence introduced indicating that an embankment and shrubbery obstructed the view of persons approaching from the east.

It was developed by the testimony that the decedent had been drinking heavily during the preceding afternoon and night, and that about midnight he left his drinking companions at a mine located about two miles north of the crossing and started toward his home. He was last seen by a filling station operator "around eleven or twelve o'clock, pretty late." According to this witness's testimony, he had gotten out of bed to sell gasoline to a truckman when decedent approached and spoke to him. He appeared to be sober, and departed, going toward his home at Lily. The filling station was about two hundred yards from the railroad and about a quarter of a mile from the crossing. Some fifteen minutes later after closing the pumps and going inside, and while drinking a bottle of pop, the witness heard a fast train going north, and a few minutes later, another train going south, but did not hear either of them whistle or sound a bell for the crossing. He paid no attention to the southbound train, but, looking out of his window, saw the headlight and lighted coaches of the northbound train.

Three witnesses were introduced by appellant to prove that no whistles or other signals were sounded by trains passing over the crossing between midnight and six o'clock A. M., but the first of these was only able to state that if any such signals were given between eleven P. M., and three o'clock A. M., he did not hear them. The second, a woman whose home was located approximately one hundred and fifty yards from the tracks, said that she was at home asleep in bed but awakened about midnight and got up to see what time it was, after which, although she returned to her bed she did not go to sleep, and heard "every little train run from midnight on." She "didn't hear them ring no bell or blow either," although she could hear them "any time I want to."

The third witness introduced for this purpose testified that she was sick; that "as a rule" the trains awakened her by their whistles, and in answer to the question "whether or not any train between midnight (of March 26th) and daylight blowed for that crossing or rang any

bells," answered: "If they did, I didn't hear them," which answer, the Court excluded.

By the testimony of appellee's train dispatcher it was established that between 12:30 A. M. and 6:30 A. M. of March 27th, the period during which, according to the petition, decedent was struck and killed, three northbound passenger trains, two northbound freight trains, one southbound passenger train, and four southbound freight trains passed over the crossing, and that between midnight and 12:30 A. M. two southbound passenger trains and one northbound freight train passed.

From the foregoing testimony, all of which was introduced by appellant, it is argued by appellant's counsel that Barker was killed while crossing the tracks at the crossing sometime between midnight and 6 o'clock A. M. by one of appellee's numerous northbound trains. It is argued by appellee that the decedent was struck on or near the tracks south of the crossing, else the remains of his body would have been found much further north. No one saw the decedent on the tracks or at the crossing; no one attempted to say by which train he was struck; and the only intimation contained in the record that the crew of whichever train struck him was guilty of negligence, is found in the unsatisfactory testimony of the several witnesses referred to that they did not hear any train signal its approach to the crossing. Had it been established that the train which struck decedent failed to signal its approach, it would still have to be assumed, in order to entitle appellant to a recovery, that the deceased was attempting to cross the track at the crossing and that his death was attributable to such failure.

At the conclusion of appellant's evidence, the Court sustained appellee's motion for a directed verdict, and from the judgment entered on that verdict this appeal is prosecuted.

It is at once apparent that the cause of the fatal accident was not established and remains wholly within the realm of conjecture. For aught the evidence shows, the decedent might have been asleep on the track at the time he was struck, or staggering so near thereto that no amount of care or effort by the trainmen could have prevented his destruction. It is true that contributory negligence is never presumed; but neither is negligence on the part of the party sought to be charged. Appellant's

350

counsel cites several opinions of this Court from which it may be gathered that the presence of an eye witness to an accident resulting in the death of a licensee is not requisite to a recovery where there is evidence that the decedent was approaching a crossing or properly using the tracks immediately before he was struck by an identified train, the crew of which was guilty of an omission of duty, which, if performed, would have apprised the deceased of the train's approach. But such is not this case. On the contrary, it is controlled by the principles analyzed and applied in the following cases which conclusively negative appellant's right to a recovery on the evidence presented: Strock's Adm'r v. Louisville & Nashville Railroad Co., 145 Ky. 150, 140 S. W. 40; Stuart's Adm'r v. Nashville, C. & St. L. Railway Co., 146 Ky. 127, 142 S. W. 232; Chesapeake & O. Railway Co. v. Preston's Adm'r'x, 228 Ky. 572, 15 S. W. (2d) 427; Goodman's Adm'r'x v. Chesapeake & O. Railway Co., 252 Ky. 366, 67 S. W. (2d) 469; Chesapeake & O. Railway Co. v. Butcher's Adm'r, 263 Ky. 45, 91 S. W. (2d) 551; Amburgy's Adm'r'x v. Chesapeake & O. Railway Co., 272 Ky. 571, 114 S. W. (2d) 1093.

Judgment affirmed.