## HACKWORTH v. CHESAPEAKE & O. RY. CO.

### No. 138.

District Court, E. D. Kentucky, at Catlettsburg.

July 23, 1946.

Martin & Smith, of Catlettsburg, Ky., and F. C. Malin, of Ashland, Ky., for plaintiff.

LeWright Browning, of Ashland, Ky., for defendant.

### SWINFORD, District Judge.

The motion for a new trial should be overruled. The plaintiff's brief cites the following cases on which he relies, but I do not believe, in the light of the Kentucky decisions, the Court erred in sustaining the defendant's motion for a directed verdict at the close of all evidence: Sims' Adm'r v. Chesapeake & O. Ry. Co., 140 Ky. 241, 130 S.W. 1081; Stuart's Adm'r v. Nashville, C. & St. L. Ry. Co., 146 Ky. 127, 142 S.W. 232; Louisville, C. & L. Ry. Co. v. Goetz's Adm'x, 79 Ky. 442, 42 Am.Rep. 227; and Louisville & N. R. Co. v. Clark's Adm'r, 105 Ky. 571, 49 S.W. 323.

In the Sims case a witness definitely identified the deceased by his voice about thirty · minutes before the train passed the crossing and testified that he was going toward the crossing where he was later found dead. His body was some thirty-five feet from the crossing mangled almost beyond recognition and the court found as a fact that there was no question but that he was killed by the train. The conclusion that he had been killed by the train was based on positive obvious facts. Cinders were "scuffed" up as if something had been dragged over them from the road. There were scraps of hair, blood and clothing on the ties. The plaintiff also proved by several witnesses that the train gave no signal of its approach to the crossing.

In the Stuart case the deceased's body was found near the railroad tracks of the railway company at a street crossing in the City of Paducah by the conductor of a street car. The discovery was made as the street car was crossing the railroad tracks following a delay caused by one of the railway company's trains crossing the street. Plaintiff quotes in his brief the following language from that case:

"We think that when there is evidence that a traveler is struck and killed by a train at a public crossing, where he has a right to go and be, and it is shown that the train did not give the usual or statutory signals of its approach to the crossing, that the inference of negligence is sufficient to take the case to the jury, although there may be no eye witness to the accident, or other evidence as to how it happened." [146 Ky. 127, 142 S.W. 233.]

With this rule there can be no disagreement as it has long been the law of Kentucky. However, it can not be applied to the case at bar as there is no "evidence that * * * the train did not give the usual or statutory signals of its approach to the crossing" and there is some doubt that the plaintiff's decedent was "struck and killed by a train."

Testimony on the question of whether the required statutory signals were given by the train before it reached the crossing was given by only two of the plaintiff's witnesses, John B. Sloan and Earl Brown. The testimony of Sloan on this point was:

Direct examination:

"Q. Did the train whistle at that whistling post? A. If it did, I can't recall.

"Q. You were looking at it weren't you? A. I was looking up that-a-way. I never heard no train whistle only for the Summit Crossing.

"Q. Did you hear the ring of any bell? A. I don't remember.

"Q. You were in a position to hear it whistle and ring the bell at that whistling post if it had done either, weren't you? A. It could have whistled and I might not have paid any attention, you know I was so used to crossing there. I don't remember anything about a bell ringing or about a whistle."

Cross-examination:

"Q. Now, you don't know, Mr. Sloan, whether that train whistled for that crossing or not, do you? A. I do not.

"Q. You weren't paying much attention to it. A. Wasn't paying much attention to it.

"Q. It may have whistled or the bell may have been ringing and you didn't know, didn't recall it? A. It didn't draw my attention.

"Q. All you know now is, you don't recall having heard anything but the whistle down at Summit? A. That's all.

"Q. But you're not telling the Court and the jury that the train didn't whistle for that crossing? A. No, sir, I am not positive."

Testimony of the witness Earl Brown was as follows:

Direct examination:

"Q. Did you hear that train whistle that night? A. No sir.

"Q. Was it ringing its bell as it approached that crossing? A. No, sir, I don't remember of it.

"Q. You were at home, I believe? A. Yes, sir, I was."

Cross-examination:

"Q. You say you heard a train go by there about ten o'clock? A. Yes, sir.

"Q. You were not paying any attention to whether it was whistling or not? A. No, I can't say it whistled at all. I don't remember whether the bell rang.

"Q. You don't know whether it whistled or not? A. No, sir.

"Q. You just don't know anything about it? A. I just answered the question."

Re-direct examination:

"Q. Was it ringing the bell then? A. No, sir, not that I heard."

Re-cross-examination:

"Q. You mean, not that you paid any attention to it, that you recall anything about it? A. I don't recall any bell or whistle."

Considered in the most favorable light for the case of the plaintiff, the testimony of these two witnesses lacks that degree of proof that would warrant an inference of negligence sufficient to submit the case to the jury.

The Stuart case is so strikingly on all fours with the case at bar that I feel constrained to quote from it as follows:

"The theory of counsel for appellant is that, as the deceased was walking across the railroad track at a public crossing, where he had a right to be, he was struck and killed by a train that did not give any signals of its approach to the crossing, and in this respect the employes in charge of it were guilty of actionable negligence. If there was any evidence to support this theory, then the case should have gone to the jury. We think that when there is evidence that a traveler is struck and killed by a train at a public crossing, where he has a right to go and be, and it is shown that the train did not give the usual or statutory signals of its approach to the crossing, that the inference of negligence is sufficient to take the case to the jury, although there may be no eye witness to the accident, or other evidence as to how it happened. Louisville, C & L. R. Co. v. Goetz, 79 Ky. 442, 42 Am.Rep. 227; Louisville & N. R. Co. v. Clark, 105 Ky. 571, 49 S.W. 323; Sims v. Chesapeake & O. Ry. Co., 140 Ky. 241, 130 S.W. 1081. But neither the evidence for appellant, nor any fair inference that can be drawn from it, discloses a condition such as we have assumed would be sufficient to carry the case to the jury. Although the action is rested upon the ground that the death of appellant's intestate was brought about by the negligence of the company, there is a total failure of evidence to connect his death with any negligence on its part. There is no evidence as to the position or location of the deceased at the time he was killed. He may have been attempting to

cross the railroad track on the crossing at the time he was struck and killed, or he may have been asleep on the track when he was struck and killed, or he may have been riding on or attempting to get on some part of the train, and have fallen from it at the crossing, receiving the injuries that resulted in his death. To make out a case for the plaintiff, we would have to assume that the deceased was attempting to cross the track at the crossing, and further assume that his death was due to the failure of the moving train to give any signals of its approach. In short, unless the mere fact that a [person] is found dead at or on a railroad crossing is in itself sufficient to authorize a submission to the jury of a case brought by his administrator to recover damages for his death, then the trial judge did not err in his ruling. In cases like this, no presumption is to be indulged in against the deceased; nor is it required that the plaintiff who is seeking to recover damages for his death shall show that he was free from blame. Warren v. Jeunesse [Ky.], 122 S.W. 862; Cumberland Telephone & Telegraph Co. v. Graves, [Ky.], 104 S.W. 356; Lexington & Carter County Mining Co. v. Stephens, 104 Ky. 502, 47 S.W. 321. But in all cases of this character, where it is sought to recover damages for negligence or wrongful act, there must be some evidence to show that the deceased lost his life through the negligence of the defendant, and this evidence must be sufficient to charge the defendant with a breach of duty. A recovery cannot be had on mere surmises or speculations as to how the injury that is complained of happened; nor will it be presumed that the defendant was guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, then the well-settled rule is that a recovery cannot be had. This principle is well expressed in Hughes v. Cincinnati, etc., R. Co., 91 Ky. 526, 16 S.W. 275. In that case, the cause that produced the death of Hughes was involved in doubt, and the court said:

" 'We are left to theorize as to it. One suing to recover damages for injury arising from another's neglect must offer some testimony conducing to show that it was so occasioned. Negligence cannot be presumed in a case like this one. The presumption is the other way. It cannot be found without evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury, with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case, there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident.' To the same effect is Hurt v. Louisville & N. R. Co., 116 Ky. 545, 76 S.W. 502. Early v. Louisville, H. & St. L. Ry. Co., 115 Ky. 13, 72 S.W. 348."

Another case relied upon by the plaintiff here is Louisville, C. & L. R. Co. v. Goetz's Adm'x, supra. In the Goetz case there was no question raised as to how the deceased met his death. There was a conflict of evidence as to when the train's whistle was blown for the crossing, the engineer's own testimony estimating that the train was within "sixty or seventy" yards of the crossing when the whistle was sounded and later in his testimony the distance from the crossing was estimated to be three hundred yards from the intersection.

In the case of Louisville, & N. R. Co. v. Clark's Adm'r, supra [105 Ky. 571, 49 S.W. 324], it was charged that the crossing where the accident occurred was especially dangerous by reason of " 'an embankment and other obstructions' standing on defendant's right of way, which prevented plaintiff's intestate from observing the approach of the train before he attempted to cross the track * * *." The facts in the case at bar are clearly distinguishable from those in the Clark case and I find

nothing in it contrary to the ruling of the Court in this case.

I have endeavored to compare with the case at bar each case cited by the plaintiff and on which he relies to sustain the motion for a new trial, and to point out the distinguishing features between them. While I believe there is a sharp factual difference between this case and Sims' Adm'r v. Chesapeake & O. Ry. Co., supra, the language of the court in the Sims case is stronger for the plaintiff's position than in any other Kentucky case I have examined. Again, however, I point out that in that case the deceased was found to have been unquestionably killed by the train. Here there is grave doubt of that fact. This doubt arised from the testimony of the plaintiff's witnesses and from the physical facts at the place where the body was found. In the Sims case there was positive proof by several witnesses that no warning was sounded by the approaching train. In this case there is no proof that the signals were not given. There was in the Sims case a slight curve in the track just before it reached the crossing. While it is pointed out that this did not obstruct the view of the trainmen it might have prevented the deceased from having the clear unobstructed view of the approaching train which a pedestrian using the crossing described in the proof here undoubtedly had.

Aside from this I believe that any doubt which the Sims case may have engendered in crossing cases of this character has been completely dissipated by the later decisions of our Kentucky Court of Appeals. The Court necessarily must follow these later cases. It is my opinion that the motion for a new trial should be overruled for the following reasons.

■■■ There is no proof of negligence on the part of the defendant. The only testimony that remotely approaches such proof is that of Mr. Sloan and Mr. Brown who say that they never heard any whistle or bell. Whatever effect such testimony might have as evidence is destroyed by their whole statements on this point, which narrows down to the proposition that they were paying no attention and would not say one way or the other. Surely it cannot be seriously contended that such evidence reaches the dignity of proof of negligence. Since the scintilla rule has been abolished in Kentucky, Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877, it must be concluded that no evidence of negligence is disclosed by the record.

In Byrge's Adm'x v. Louisville & N. R. Co., 294 Ky. 366, 171 S.W.2d 1010, 1011, a witness Siler testified "that if any signals were given he did not hear them." The court held that such evidence was negative and not sufficient proof of negligence to justify a submission of the case to the jury.

■■ I feel that the motion for a new trial should be overruled for the further reason that it is impossible to determine what occurred. Necessarily some degree of speculation may be permitted in any case of circumstantial evidence. The doctrine of res ipsa loquitur is a modified form of speculation. In the absence of eye witnesses circumstances may point unerringly to a rational theory of what occurred. This is nothing more than the recognized principle that the triers of facts, either court or jury, must consider the facts presented and all reasonable inferences which may be drawn therefrom. But the facts here present such a picture that no definite theory could be established and no reasonable inference could be drawn. This is well expressed by Commissioner of Appeals Clay in Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S.W. 938, 940, in the following language:

"Following this rule, it is held that conjecture affords no sound basis for a verdict. It is not sufficient, therefore, to present a number of circumstances about which one might theorize as to the cause of the accident. Where it is sought to base an inference on a certain alleged fact, the fact itself must be clearly · established. if the existence of such a fact depend on a prior inference, no subsequent inference can legitimately be based upon it."

■ An inference is a conclusion drawn by reason from facts established by proof. Cochran's Adm'rs v. Chesapeake & O.

Ry. Co., 232 Ky. 107, 22 S.W.2d 452; Caldwell's Adm'r v. Chesapeake & O. Ry. Co., 155 Ky. 609, 160 S.W. 158.

Counsel for the plaintiff cite the very recent case of Lavender, Adm'r v. Kurn et al., 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. That was under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., a federal statute, the application, construction and interpretation of which is governed by the federal courts. This case must be determined solely on the Kentucky law as laid down by our Kentucky Court of Appeals. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In order to sustain the motion for a new trial I would have to ignore the overwhelming authority found among the Kentucky cases. Cases directly in point may be found as follows: Louisville & N. R. Co. v. Adam's Adm'x, 301 Ky. 7, 190 S.W.2d 690; Chesapeake & O. Ry. Co. v. Williams' Adm'x, 300 Ky. 850, 190 S.W.2d 549; Byrge's Adm'x v. Louisville & N. R. Co., supra; Barker v. Louisville & N. R. Co., 289 Ky. 347, 158 S.W.2d 642; Chesapeake & O. Ry. Co. v. Preston's Adm'x, 228 Ky. 572, 15 S.W.2d 427.

The case of Louisville & N. R. Co. v. Adams' Adm'x, supra, was decided November 20, 1945. The facts were much stronger in favor of the plaintiff than here. In that case the deceased was last seen between eight and nine o'clock P. M. Between ten and eleven o'clock on the same night he was heard to call out "come and get me." Shortly after this cry was heard a train crossed the railroad bridge where his mangled body was found. There was ample evidence to conclude that he was killed by the train. In holding that there should have been a directed verdict the court in its opinion quoted with approval the following language from Chesapeake & O. Ry. Co. v. Preston's Adm'x, supra:

"The courts cannot enter the realm of speculation and upon some possibility, theory, or assumption permit a recovery for a tortious act. It is a thoroughly established rule in the law of negligence that, where an injury or death may from the facts and circumstances be as reasonably attributed to a cause that will excuse a defendant as to a cause that will subject him to liability, the former will be presumed. To state the rule differently: Where the evidence is equally consistent with the absence as with the existence of negligence as the proximate cause of injury, the plaintiff has failed to make out a case to submit to a jury.

"* * * The mere fact that a person is found dead at or on a railroad, whether it be at or near a public crossing, is not in itself sufficient to authorize the submission of the case to the jury." [301 Ky. 7, 190 S.W.2d 691.]

In Chesapeake & O. Ry. Co. v. Williams' Adm'x, supra [300 Ky. 850, 190 S.W.2d 551], the following quotation states the applicable rule:

"We have pointed out repeatedly that the mere proof that a person is run over and killed by a train is not sufficient to sustain a recovery. A case should not be submitted to the jury where it is apparent that a verdict in favor of the plaintiff can be arrived at only through surmise and speculation, no negligence having been shown on the part of the defendant."

Byrge's Adm'x v. Louisville & N. R. Co. supra, refers to Sims' Adm'r v. Chesapeake & O. Ry. Co., supra, and points out that in that case and those following it the evidence revealed that the injuries were inflicted by the train and that the injured person was using the tracks or crossing public crossings. In sustaining the ruling of the lower court in directing a verdict for the defendant, Judge Cammack in the opinion said:

"Here there is no evidence showing that Byrge was injured by a train; nor was it shown what he was doing at the time he sustained his injuries. While two witnesses said they saw him near the depot during the latter part of the night, or shortly before daylight, it was not until after daylight that he was found. Of course, there is testimony that some hair and blood were seen on a railroad tie near the place where he was picked up. This of itself will not impute negligence to the Company. Byrge may have been asleep upon the track, or he may have been assaulted and

354

left there. He may have been walking along the side of the track and have fallen or stumbled into the path of the train, or he may have been injured while attempting to board it. The evidence of Siler as to the signals is only negative evidence, and there is no showing whatever that the members of the train crew were not maintaining a lookout; or that, in the event Byrge was upon the track, his peril was discovered in time to avoid injuring him. Under the circumstances the jury could only have surmised or speculated as to the manner in which he sustained his injuries."

In Barker v. Louisville & N. R. Co., supra, the trial court directed a verdict for the defendant. The evidence disclosed that three of plaintiff's witnesses had testified that if any trains that passed during the period of time in which the deceased was killed, had sounded the required signals of blowing the whistle or ringing the bell that they could have heard it, but did not hear any warning whistle or bell. The testimony in this respect is strikingly similar to that of the witnesses Sloan and Earl Brown in the instant case. The following pertinent statement from the opinion is quoted as follows [289 Ky. 347, 158 S.W.2d 643].

"It is at once apparent that the cause of the fatal accident was not established and remains wholly within the realm of conjecture. For aught the evidence shows, the decedent might have been asleep on the track at the time he was struck, or staggering so near thereto that no amount of care or effort by the trainmen could have prevented his destruction. It is true that contributory negligence is never presumed; but neither is negligence on the part of the party sought to be charged."

■ It should not be overlooked that not only must negligence be established but also that the negligence must be the proximate cause of the alleged injury. See the opinion in Chesapeake & O. Ry. Co. v. Goodman's Adm'x, 218 Ky. 117, 290 S.W. 1054, 1055.

"There is some conflict in the evidence about signals, but the failure of the defendant to give signals, if such were established, does not make it responsible, unless it can be shown that such failure was the proximate cause of the man's death. How this man came to his death is entirely a matter of conjecture, and, under the circumstances, the jury should have been instructed to find for the defendant. See Daugherty's Adm'r v. Louisville & N. R. Co., 206 Ky. 325, 267 S.W. 151, and cases there cited. Because that was not done, this judgment is reversed, and the defendant awarded a new trial."

■ Further reference to the numerous cases in Kentucky would serve no useful purpose. They are all in accord with the passages I have quoted and the court cannot possibly conclude other than that the directed verdict in the case at bar is in accord with the binding Kentucky rule.

An order overruling the motion for a new trial is this day entered.