# Stuart's Admr. v. Nashville, Chattanooga & St. Louis Railway Company.

(Decided January 9, 1912.)

## Appeal from McCracken Circuit Court.

1. Railroads—Action Against, for Death—Failure of Proof.—In an action against a railroad company to recover damages for the death of a person, the evidence showed that he was killed at a public crossing, but there was no proof that his death was caused by the negligence of the company, and there could be no recovery.

2. Same—Evidence of Negligence, When Sufficient to Authorize Submission to Jury.—When there is evidence that a traveler is struck and killed by a train at a public crossing where he has a right to go and be, and it is shown that the train did not give the usual or statutory signals of its approach to the crossing, the inference of negligence is sufficient to take the case to the jury, although there may be no eye witness to the accident or other evidence as to how it happened.

3. Same—Presumption of Negligence.—Where a person is found dead at a crossing, no presumption of negligence will be indulged in against the deceased, nor is it required that the plaintiff who is seeking to recover damages for his death shall show that he was free from blame. But, in all cases of this character, there must be some evidence to show that the deceased lost his life through the negligence of the defendant. A recovery cannot be had on mere surmise or speculation as to how the injury happened, nor will it be presumed that the defendant was negligent. If the injury may as reasonably be attributed to a cause that will excuse a defendant, as to a cause that will subject it to liability, a recovery cannot be had.

EATON & BOYD and BRADLEY & CHILTON for appellant.

WHEELER & HUGHES and CLAUDE WALLER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action to recover damages for the death of James A. Stuart, the trial court upon the conclusion of the evidence for the appellant, who was the plaintiff below, directed a verdict in favor of appellee, the defendant below. The only question for decision is, did the court err in taking the case from the jury.

On the 29th of November, 1910, about six o'clock in the evening, the deceased, Stuart, was found dead near the railroad tracks of the appellee company at a street crossing in the city of Paducah. He was first discovered by the conductor on a street car, who testified in sub-

stance that when the street car reached the crossing on its way from the Union Depot, to which place it had gone a few minutes before, a freight train was standing on the crossing. That in a few minutes the freight train cleared the crossing, and he then went out on the railroad tracks in front of the street car to see that the way was clear, and discovered the dead body of Stuart near the railroad track. He said that he did not notice the train until the car reached the railroad track, when he discovered it on the crossing. Asked if he saw or heard any signals given by the train when the street car reached the railroad on its return from the Union depot, he said, "I did not notice any signals until after the crossing was cleared, and then the bell was ringing down the track and that is when I give the alarm that they had killed a man; the bell was ringing down below the crossing; that was after the train had cleared the crossing? Q. You heard no whistle blowing or anything of that sort? A. No, sir."

The motorman on the street car testified that when he crossed the railroad track with the street car, on his way to the Union depot, he noticed the engine and train standing about 150 or 200 yards from the crossing, that after he crossed the train moved down the track, and on the return trip from the depot, which was only a short distance away, the train was standing on the crossing. That he did not pay any attention to the train from the time he crossed the track on his way to the depot until he returned and found it on the crossing. That he did not know whether the engine bell was ringing or any signals were given as the train moved from the place it was standing when he went to the depot. He further testified upon this point as follows: "Q. Could you have heard the bell if it had been ringing? A. O! if I had been listening for it particularly, I might have heard it, but we wasn't thinking nothing about the train at all, only I knew I stopped and seen it there as I went to the depot, and, while we were at the depot it pulled across the crossing. Q. How long were you at the depot before you returned to this crossing? A. Some four or five minutes, I reckon. Q. Was the engine bell ringing when you crossed the track going to the depot? A. I did not notice it ringing. Q. When it was up at the depot? A. I did not notice it was ringing up there. Q. Before the train moved over the crossing, did you hear the bell on the engine ringing? A. No, sir, I did not. Q. What did

the flagman do when he cut the train in two? A. He walked in front of the car. Q. Did he give any signals for the train to move in any direction? A. Yes, sir, he signalled with his lantern. Q. What did you do then? A. Rung my bell and started up just as the train was moving out; I had not got clear of the crossing and the conductor hollered and says 'Wait, here's a dead man,' and I told him I couldn't stop on the railroad, and I pulled across the railroad and stopped my car. Q. After the brakeman signalled for the train to move up, state whether or not you heard the bell begin to ring then. A. Yes, sir.''

The coroner and a Mr. Vicks testified that when they went to the place where the body was, about an hour after the man was killed, they found blood at different places on the track, indicating that the body had been dragged by the cars on the rails or tracks several feet from the place where the man was first struck, and then dragged back again. This is the substance of all the evidence introduced for the plaintiff. There is no direct evidence that the deceased was killed by the train, or that he was killed at or on the crossing, but we think the inference may fairly be drawn from the evidence that he was killed by the train at or near the crossing. The motorman and the conductor on the street car were the only witnesses who were inquired of or gave evidence concerning signals given by the train, and it appears from their evidence that they did not give any attention to the matter of signals or hear any until after the street car returned from the Union depot and was standing waiting for the train to clear the crossing, and that when the train moved off the crossing the engine bell was ringing.

The theory of counsel for appellant is that as the deceased was walking across the railroad track at a public crossing, where he had a right to be, he was struck and killed by a train that did not give any signals of its approach to the crossing, and in this respect the employes in charge of it were guilty of actionable negligence. If there was any evidence to support this theory, then the case should have gone to the jury. We think that when there is evidence that a traveler is struck and killed by a train at a public crossing, where he has a right to go and be, and it is shown that the train did not give the usual or statutory signals of its approach to the crossing, that the inference of negligence is suf-

ficient to take the case to the jury, although there may
be no eye witness to the accident or other evidence as
to how it happened. L. C. & L. R. Co. v. Goetz, 79 Ky.,
442; L. & N. R. Co. v. Clark, 105 Ky., 571; Sims v. C. &
O. Ry. Co., 140 Ky., 241. But, neither the evidence for
appellant, nor any fair inference that can be drawn from
it discloses a condition such as we have assumed would
be sufficient to carry the case to the jury. Although the
action is rested upon the ground that the death of appel-
lant's intestate was brought about by the negligence of
the company, there is a total failure of evidence to con-
nect his death with any negligence on its part. There is
no evidence as to the position or location of the deceased
at the time he was killed. He may have been attempting
to cross the railroad track on the crossing at the time
he was struck and killed, or, he may have been asleep on
the track when he was struck and killed, or, he may have
been riding on or attempting to get on some part of the
train and have fallen from it at the crossing, receiving
the injuries that resulted in his death. To make out a
case for the plaintiff, we would have to assume that the
deceased was attempting to cross the track at the cross-
ing, and further assume that his death was due to the
failure of the moving train to give any signals of its
approach. In short, unless the mere fact that a person
is found dead at or on a railroad crossing is in itself
sufficient to authorize a submission to the jury of a case
brought by his administrator to recover damages for his
death, then the trial judge did not err in his ruling. In
cases like this, no presumption is to be indulged in
against the deceased, nor is it required that the plain-
tiff who is seeking to recover damages for his death shall
show that he was free from blame. Warren v. Jeun-
essee, 122 S. W., 862; Cumberland Telephone & Tele-
graph Co. v. Graves, 104 S. W., 356; Lexington & Carter
County Mining Co. v. Stephens, 104, 502. But in all
cases of this character where it is sought to recover
damages for negligence or wrongful act, there must be
some evidence to show that the deceased lost his life
through the negligence of the defendant, and this evi-
dence must be sufficient to charge the defendant with a
breach of duty. A recovery can not be had on mere sur-
mises or speculation as to how the injury that is com-
plained of happened, nor will it be presumed that the de-
fendant was guilty of actionable negligence. If the in-
jury may as reasonably be attributed to a cause that will

excuse the defendant as to a cause that will subject it to liability, then the well settled rule is that a recovery can not be had. This principle is well expressed in Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526. In that case, the cause that produced the death of Hughes was involved in doubt, and the court said:

"We are left to theorize as to it. One suing to recover damages for injury arising from another's neglect must offer some testimony conducing to show that it was so occasioned. Negligence can not be presumed in a case like this one. The presumption is the other way. It can not be found without evidence. The complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. Mere proof of the injury, with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case, there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident." To the same effect is Hurst v. L. & N. R. Co., 116 Ky., 545; Early v. L. H. & St. L. Ry. Co., 115 Ky., 13.

It is, however, earnestly insisted that there is evidence that the employes failed to give the usual and customary signals of the approach of the train to this crossing and in this respect were guilty of negligence. But, as before stated, we do not think the evidence is sufficient to show that the bell was not rung, and the ringing of the bell was all that was required. But, if we should assume that the bell was not rung, and that no other warning of the approach of the train to the crossing was given, and that the company was guilty of neglect in this particular, the case for the appellant would not yet be made out, as it is not shown that he was rightfully or indeed at all traveling on the crossing at the time he was struck and killed. If we should indulge in speculation as to how he happened to be struck by the moving train, it would be more reasonable to conclude that in some way he fell from or in attempting to get on the moving train, as there is no evidence whatever showing where he was going to or where he had come from or

what business, if any, he was engaged in at the time he was killed.

Upon the whole case we are satisfied that the judgment should be affirmed, and it is so ordered.