## Caldwell's Administrator v. Chesapeake & Ohio Railway Company, et al.

(Decided October 31, 1913).

### Appeal from Boyd Circuit Court.

1. Negligence—Presumption—Burden of Proof.—Negligence is not presumed, but must be directly proved, or the facts shown from which it may reasonably be inferred; the burden of proof in such case being on the plaintiff.

2. Railroads—Injury to Pedestrian—Action—Sufficiency of Evidence.—In an action for the death of a pedestrian by being run over on the defendant railway company's track by one of its trains, it is not incumbent on the defendant to account for the decedent's death. In order to recover, the plaintiff must prove that it was caused by the negligent operation of the defendant's train; and if there is no evidence to prove the negligence complained of, a peremptory instruction directing a verdict for the defendant, should be given by the trial court.

3. Railroads—Negligence—Verdict.—When the question in such case is one of negligence or no negligence, it is the rule of law, that where the evidence is equally consistent with either view the existence or nonexistence of negligence, a verdict should be di-

rected for the defendant, as the party affirming the negligence has failed to prove it.

JOHN W. WOODS for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought in the court below by the appellant, William De Board as administrator of the estate of Andy Caldwell, deceased, against the appellees, Chesapeake & Ohio Railway Company, E. W. Munsey and Sam Griffith, its engineer and flagman, to recover damages for the death of his intestate, alleged in the petition to have been caused by the negligence of the appellees in running over his body a train owned by the railway company and operated by its servants, Munsey and Griffith.

Appellees filed a joint and separate answer of two paragraphs. The first contained a traverse and the second a plea of contributory negligence, which was controverted by reply. The trial resulted in a verdict for the appellees, the jury being instructed to so find, by a peremptory instruction given by the court at the conclusion of appellant's evidence. Appellant excepted to the giving of the peremptory instruction and, following the return of the verdict and entry of judgment thereon, filed a motion and grounds for a new trial, but the motion was overruled and he has appealed.

It appears from the bill of evidence that the dead body of the appellant's intestate, Andy Caldwell, was found upon a track of the appellee railway company, in the city of Ashland, which runs in a northerly direction from its main track down Seventh street to Front street, thence on Front street in an easterly direction to the eastern extremity of Ashland. The body of Caldwell, when discovered, was lying about one hundred feet east of Seventh street. At that point and in Front street the track of the appellee railway company is paralleled by that of the Ashland Coal & Iron Railway Company. It is claimed by appellant that the decedent was killed by the negligent operation of passenger train No. 24, which is daily run by the appellee railway company between Lexington and Ashland, as it was being moved at night on the track described to the railway yards.

The decedent's body seems to have been severed between the waist and shoulders, the head, shoulders and upper part of the chest being between the rails of the railway track, and the remainder of the body on the outside of the south rail. It appears from the evidence that Caldwell was last seen alive about 11 o'clock on the night preceding the finding of his body, by Charles Lane, a witness introduced by appellant, at which time decedent was on Front street, between Eighth and Ninth streets, going westward toward the point where his body was, on the following morning, found. Lane testified that he watched him until he arrived at Eighth street; that he seemed to be very much intoxicated, as he was staggering from side to side of the street; and that he vomited as he walked along. When Lane, who lived nearly opposite the place where the body was found, went to his home, between twelve and one o'clock on the same night, he did not see the body or then know of the decedent's death; but after getting into his room, he heard a train pass without noticing whether the bell was rung or whistle blown.

The appellee, Sam Griffith, who was flagman upon train 24, which appellant claims caused the death of the decedent, and the only witness introduced as to the movements of the train, testified that this train was due at Ashland at 12:20 a. m., but he did not remember whether it reached Ashland that night on its regular time. He further testified that, after it reached Ashland, it was, as usual, backed up Front street beyond the place where the body of decedent was found, the rear passenger coach being the leading car as the train was backing in on the track in question; that he was on the end of this coach, and, therefore, at the head of the backing train; that there was a red light on the platform and a white light in his hand; that he got off the train before it reached Front street, at a point about forty or fifty feet from where the decedent's body was subsequently found, and walked down to the corner of Front street and then looked up Front street along the track, and failing to see anybody on or near the track, he signaled the engineer to proceed and when the train came up to where he was standing he again got upon the end of the car where he had formerly stood and maintained a lookout therefrom as the train was backing on up Front street. He also testified that an air hose was on the platform for use in giving signals, but he did not remem-

ber whether it was used by him that night; nor was he able to recall what signals were given by the train, though it was the custom to give signals of the movements of the train with the whistle or bell, and he had no recollection that such signals were not given as usual.

It should here be remarked that appellant's evidence conduced to prove that two or three wounds were found on the decedent's body, which appear to have been made or cut by some instrument penetrating the flesh. It was also made to appear that blood spots were found upon the wheels and trucks of the coaches belonging to train 24, but it was not definitely shown that this was fresh blood or that it came from a living body.

The burden was upon appellant to show that his decedent's death was caused by the negligent operation of train 24. If the evidence introduced by him failed to prove negligence in the operation of the train, his contention that the trial court erred in giving the peremptory instruction must fail. Briefly summarized, the evidence upon which appellant claimed the right to have his case submitted to the jury established only the following facts: That when the decedent was last seen alive he was about two hundred feet from the point at which his body was subsequently found on the railroad track; that train 24 was not backed out on that track until an hour or an hour and a half after he was thus seen; that when seen at the time and place mentioned he was going in the direction of his home and was so intoxicated as to be barely able to walk; that, when later found on the railroad track, his body had been severed by the wheels of a train; that blood spots were found on the wheels and trucks of some of the coaches of train 24.

Can the negligence charged against appellees be fairly inferred from the foregoing facts? In our opinion, this question must be answered in the negative. It may be conceded that the evidence was sufficient to prove that train 24 ran over decedent's body, but whether it did so while he was alive, or after he had been killed by other means and his body placed upon the track, was not made to appear from the evidence. There was evidence tending to show that there were cuts and wounds upon the body that could have been inflicted by some sharp instrument, and if we are to speculate as to the cause of decedent's death, it might be surmised that it resulted from wounds inflicted by some such instrument and that his slayer placed his body upon the railroad

track after taking his life, or by reason of his attempting to climb on the train while in motion. The fact that blood was found on train 24, while indicating that this train ran over his body, does not remove the cause of his death from the field of speculation, as some other train might prior to the passage of 24 have been run out upon the same track and over the body of the decedent, thereby causing his death. There was, it is true, no evidence of the passing of any other train over that track, and it is likewise true that there was no evidence that there was no such a train, but, as previously stated, it is not to be overlooked that it was incumbent upon appellant to show that the decedent's death was caused by train 24. Furthermore, if it be conceded to the fullest extent that the decedent's death resulted from his being run over by train 24, yet, as there was no evidence as to the position of the deceased at the time he was killed, which would tend to show that his presence on the track was known to appellees' servants in charge of the train, or might, by the exercise of ordinary care, have been known to them in time to have prevented his death, it is impossible to say that they were guilty of negligence. It is manifest from the evidence that he was almost, if not quite, helplessly drunk an hour or an hour and a half before train 24 was backed on the track where his body was found; in view of which it is probable that, in his intoxicated condition, he lay down upon the track and went to sleep, and in doing so, placed himself in such a position that appellee's servants in charge of train 24 did not discover his presence on the track, and consequent peril, in time to have prevented his death. The inference thus indulged is not an unreasonable one in view of his condition when last seen by Lane, and of the further fact that Lane an hour later, while on his way home, passed the place where the body was later found without discovering his presence on the track. The same is true of the flagman, Griffith, who, in giving the signal to train 24 to back on the track in question, stood within forty or fifty feet of the same place, without being able to discover the decedent's body on the track, if it was then on the track. According to Griffith's uncontradicted testimony, he maintained a constant lookout from the platform of the front car all the time the backing train was in motion, that there was both a red and white light in front of the car, and that the train was backed slowly; and there was no evidence

that its movements were not attended by the customary signals.

The most that can be said of the evidence is that it presents several states of case upon which one may theorize as to the cause of the decedent's death, any one of which is as plausible as the other, and all arising upon mere conjecture. A recovery cannot be had on speculation as to how the death complained of occurred; nor will it be presumed in such a case that the appellees were guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse them as to a cause that will subject them to liability, then the well settled rule is that a recovery cannot be had.

In the instant case, the evidence as a whole fails to show whether the death of appellant's intestate was due to the negligence of the appellee, his own negligence, or that of either. In other words, the cause of the death is purely a matter of conjecture. As stated in Earl's Administrator v. L., H. & St. L. R. Co., 115 Ky., 13, "There is no presumption of negligence against the appellee any more than there is a presumption of contributory negligence on the part of the deceased. It was incumbent upon the appellant to prove negligence on the part of appellee's servants in charge of the train or facts from which such negligence could properly be inferred."

The rule here applicable, is well stated in Hughes v. Cincinnati, &c., R. Co., 91 Ky., 526, as follows: "We are left to theorize as to it (cause of death). One suing to recover damages for injury arising from another's negligence must offer some testimony to show that it was so occasioned. Negligence cannot be presumed in a case like this one. The presumption is the other way. It cannot be found without the evidence. The complaining party must not only show the injury, but also some evidence tending to show the other party is to blame for it. Mere proof of the injury with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do. In such a case there is no evidence tending to show that the injury was due to neglect. Circumstances are merely presented upon which one may theorize as to the cause of the accident. The burden of showing neglect rests upon the complainant, and under such circumstances he has offered no evidence tending to show it. He has merely presented two or more states of case upon which one may theorize as to the cause of the accident. Here, first,

the deceased may have been struck by the lower roof of tunnel number seven, or, second, by that of number six, or third, by the hanging timber of number seven; and only in the latter case should there be any liability upon the part of the company."

In Louisville Gas Co. v. Kauffman, 105 Ky., 131, the doctrine under consideration is thus tersely stated, "When the question is one of negligence or no negligence, it is well settled law that where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it." Strock's Admr. v. L. & N. R. R. Co., 145 Ky., 150; Stuart's Admr. v. Nashville, &c., R. Co., 146 Ky., 127; Vittitoe's Admr. v. L. & N. R. Co., 19 Rep., 612; Wintusky's Admr. v. L. & N. R. Co., 14 Rep., 579; Lou. St. L. & T. Ry. Co. v. Terry's Admr., 20 Rep., 803; Railroad Co. v. Humphrey's Admr., 29 Rep., 642; L. & N. R. Co. v. Wathen, 22 Rep., 82; Dana & Co. v. Blackburn, 121 Ky., 707.

As, in our opinion, no error was committed by the circuit court in giving the peremptory instruction, the judgment is affirmed.