# Louisville & Nashville Railroad Company v. Philpot's Administrator.

(Decided May, 25, 1926.)

## Appeal from Laurel Circuit Court.

1. Master and Servant—Trainmen are Not Required to Anticipate Presence of Trackwalkers and Section Hands Engaged in Duties and Going to and From Work.—Trainmen are not required to anticipate presence of or maintain lookout for or give signal of train's approach to trackwalkers and section hands engaged in their duties and going to and from work, as they are charged with knowledge of movement of trains.

2. Railroads—Habitual Use of Railroad Tracks with Company's Acquiescence, Raising Duty of Anticipating Persons, Converts Persons Otherwise Trespassers Into Licensees.—Continual, habitual use of tracks of railroad, with knowledge and acquiescence of company, at particular place in such large numbers as to raise the duty of anticipating persons, converts persons who would otherwise be trespassers into licensees.

.3. Railroads—Evidence as to Number of Railroad' Employees in Addition to Others Habitually Using Tracks Held Admissible to Show Duty to Anticipate Presence of General Public.—Evidence as to number of employees, as well as others, habitually using railroad tracks as walkway at particular hour and place held admissible to show duty of railroad to anticipate presence of general public as rule that trainmen need not anticipate presence of trackwalkers and section men does not apply to general public using tracks without contractual relation.

4. Railroads—Evidence Held Sufficient for Jury as to Habitual Use of Railroad Tracks by General Public.—Evidence held sufficient for jury as to habitual use of railroad tracks at particular place by general public in such numbers as to require trainmen to anticipate their presence.

5. Railroads—Evidence Held Sufficient for Jury as to Whether Proper Lookout was Maintained and Signals Given for Benefit of Pedestrian on Railroad Track.—In action for death of one killed by train while walking on railroad tracks, evidence held sufficient for jury as to whether proper lookout was maintained and signals given.

6. Railroads—Court will Not Presume Pedestrian Killed by Train was Guilty of Contributory Negligence.—In action for death of one killed by train while walking on railroad tracks, court will not presume that deceased was guilty of contributory negligence.

7. Railroads—Contributory Negligence of Pedestrian Killed by Train Held for Jury, Though Eye-witness Testified Deceased Deliberately Went on Track.—In action for death of one killed by train while walking on railroad tracks, issue of contributory negligence of deceased held for jury, though sole eye-witness testified that deceased deliberately went on track in front of train.

8.  Trial—Instruction on Discovered Peril Held Reversible Error, where There was no Evidence that Trainmen Discovered Peril.— In action for death of one hit by train, instruction authorizing re-covery if deceased's peril was discovered by trainmen in time to avoid injury to him held reversible error, where there was no evi-dence that the trainmen discovered his peril before his injury.

9.  Railroads—Trainmen Owed Licensee no Duty if he was Picking up Coal on Tracks.—Trainmen owed licensee no duty if he was pick-ing up coal on tracks instead of using them as a walkway, though place was habitually used as a walkway.

10.  Railroads.—Railroad was not liable to licensee, if with knowledge of train's approach he went on track in front of engine.

11.  Appeal and Error.—Complaint that deceased's wife testified in action for his death cannot be considered, where there was no objection to evidence.

12.  Death—Admission of Proof of Membership of Deceased's Family is Improper.—In action for death, admission of proof of membership of deceased's family is improper.

13.  Evidence—Where Habitual Use of Railroad Tracks was Claimed, Admission of Testimony that Railroad's Employees Must have Known of Use of Track was Improper.—Where plaintiff claimed that railroad tracks were habitually used as a walkway, admission of testimony that railroad's employees must have known of use of track was improper.

14.  Railroads—Admission of Testimony as to Number of Men Em-ployed in Nearby Town Aside from those Using Railroad Tracks Held Improper.—Where plaintiff claimed that habitual use of rail-road tracks as a walkway had constituted public licensees, admis-sion of testimony as to the number of men employed in the shops of a nearby town, aside from those using the tracks, was improper.

15.  Railroads—Admission of Testimony that Witness did Not See Lookout when Engine Passed One-Half Mile Distant from Place of Injury Held Improper.—In action for death of one killed by train, admission of testimony that witness did not see any look-out from the engine when it passed him one-half mile distant was improper.

16.  Railroads—Admission of Testimony as to Sign Warning People to Keep Off Railroad Track Held Improper.—Where plaintiff claimed that habitual use of railroad tracks had constituted public licen-sees, admission of testimony as to whether a sign had been put at the point of accident warning people to keep off the track was im-proper.

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN and GEORGE G. BROCK for appellant.

LEWIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Re-versing.

John Philpot was run over and killed by a "push engine" of the L. & N. Railroad Company. Alleging that

his intestate's death was caused by the negligence of that company, the administrator of his estate sued it and recovered a judgment for the sum of $5,000.00. The company appeals.

The injury occurred between five and six o'clock on the morning of November 22, 1923, at a point three-fourths of a mile north of Corbin and in a cut near an overhead bridge, the track being slightly curved for about 25 feet north of the place of the injury, but beyond that straight for a considerable distance, it being shown that a man stationed at this place could have been seen from the engine for a distance of over three hundred feet. The railroad is double tracked, the north bound main being on the eastern side of the right of way; also there is an upgrade from Corbin to the station of Dorothea, two miles north of this bridge, and it has long been the custom of the railroad company to use an additional engine in transporting heavy trains to that point. To do this an engine and tender, called a "push engine," is attached to the rear of the train, its movements being forward to the top of the grade when it is reversed, returning on the same track with the tender in front.

This point is in a populous community, the population of the district between Corbin and Dorothea being estimated by the various witnesses at from five hundred to fifteen hundred; it being further shown that while there are some farmers, a large part of the population consists of laborers engaged in work at Corbin, both at the railroad shops and other industries in that city; it being further shown that there is a public school a short distance from the bridge, attended by 400 pupils, and also a nearby church. There is a pike running parallel with the railroad some distance to the east, but the evidence indicates that most of the travel to and from that city is on foot and upon the railroad tracks and right of way, the number of persons so using the tracks being estimated at from 200 to 800 per day, and that of these 125 to 150 are laborers employed in the shops who leave home in the early morning and return late in the evening, and this was the custom of Philpot, who was employed by the city of Corbin. He lived about 100 yards from the railroad and some 30 yards north of the overhead bridge. On this occasion he left home shortly after five o'clock, taking his dinner in a pail, a cup of coffee in a bottle and carrying a burlap sack, telling his wife that he intended "to get

some coal to warm his baby,'' which she told him not to do. She saw him go through the gate about 75 yards distant when he descended into the cut in which the tracks lay and was lost to her view. Shortly after this he was run over by the push engine on its return trip from assisting the train up the grade. It was about daybreak and there is some conflict as to the degree of visibility. At the time there were on the engine an engineer, who was riding on the east side of the engine, a fireman on the west side, a switchman on the platform in front of the engine, which was facing north, and two laborers who worked at Corbin and who had caught the engine at Dorothea and were riding to their work. Also a south-bound train had stopped a short distance below the bridge and sent a flagman back a short distance north of the bridge to protect that train. It is admitted that there was no one on the front of the tender, and two laborers (Hubbards) mentioned above, who were introduced by plaintiff, heard no signals given by the engine. One of these testifies that he saw the flagman of the other train signalling with his red lantern as they passed, and that the engine stopped within four or five car lengths; that they went back and the flagman informed them that they had killed a man; they found the mutilated remains of Philpot upon the track, also the sack cut in two and his dinner pail lying on one side of the track.

The defendant introduced the switchman, the engine-man and flagman. Both the engineer and fireman state that they were looking out of the cab from opposite sides of the engine but did not see Philpot. They further testify that the tender obstructed their view of the tracks immediately in front of them; that the headlight did not carry more than thirty feet beyond the tender; neither saw Philpot, though the fireman saw the flagman of the other train signal as they passed him. They did not heed this signal, but the air hose became uncoupled at this point and stopped the engine of itself. When it stopped they went back and the flagman of the other train told them they had killed a man. Thereupon they discovered Philpot, took up his remains and carried them to Corbin to the undertaker; both of them state that the whistle was sounded some three hundred and fifty yards north for a crossing, but no other signal was given. The switchman, who was riding in the rear on the front of the engine, saw but little of the occurrence.

The flagman of the other train, Utz, states that he was at his post when Philpot came down on the tracks and spoke to him; he did not see any dinner pail. Philpot was picking up coal and putting it in a sack, going in between and upon the tracks. The approaching engine whistled about 250 yards to the north. Philpot looked up and saw it, turned around and went on; the train whistled again within about fifty yards of him but he continued to pick up coal and as it approached within thirty feet turned and looked at it, started between the rails and the passing engine obstructed witness' view. He saw a fireman or someone with his head out of the cab and signalled as it passed, but it was so dark he could see no one else on the engine. When the trainmen came back he informed them of having killed a man; he did not see any dinner pail, but the sack was cut in two, and there were about three gallons of coal in it. Several other witnesses saw the empty sack and dinner pail, but no one else saw any coal in or near the sack.

It is earnestly insisted that a peremptory instruction should have been given on the grounds: (1) That the evidence does not show such an habitual use of the tracks by the general public as to require the trainmen to anticipate the presence of such persons on the track. (2) That if such use was shown it cannot be told from the evidence of plaintiff's witnesses as to what Philpot was doing at the time of the injury, and that this is a matter of speculation and entitled it to a directed verdict at the close of plaintiff's evidence. (3) That even if the peremptory was properly overruled at the close of plaintiff's evidence, that Utz is the only eye-witness and is uncontradicted, it being shown by him that the intestate, with full knowledge of the engine's approach, deliberately walked in front of it and thereby barred his estate of any recovery.

(1) It is first urged that in estimating the number of persons so using the tracks the employes of the company should be excluded as they are to be distinguished from other licensees, and that when this is done it is not shown that the tracks were so used by any appreciable number of persons at this hour of the day. We do not think this proposition tenable. It is true that in considering the relation of master and servant with its attendant duties and liabilities, it is uniformly held that track walkers and section hands while engaged in their duties and in going to and from their work are charged

with knowledge of the movement of trains and trainmen are not required to anticipate their presence, as employes, on the tracks, or to maintain a lookout for them as such or to give them signals of the train's approach, but that rule is based on the contractual relation of master and servant and is not applicable to the duties of trainmen towards members of the general public, whether strangers or employes, who are using the tracks as licensees and not by virtue of any *contractual* relation. The latter rule is based on the humanity of the law and is intended for the protection of human life, whereby persons who would otherwise be trespassers are converted into licensees by their continual and habitual use of the tracks at a particular place in such large numbers and with the knowledge and acquiescence of the company as to put upon it the duty of anticipating their presence.    L. & N. R. R. Co. v. Bank's Admr., 195 Ky. 804; Cornett's Admr. v. L. & N. R. R. Co., 181 Ky. 132; C. & O. R. R. Co. v. Dawson's Admr., 159 Ky. 296; C. & O. R. R. Co. v. Warnock's Admr., 150 Ky. 75; C. & O. Ry. Co. v. Berry's Admr., 164 Ky. 280.    In such instances the employe is not to be distinguished from other individuals.    If he is considered *per se* as a licensee he is as much entitled to consideration as other licensees using the tracks in the same manner.    It would be a strange doctrine to hold that where such habitual use of the tracks is sufficiently proven, if two persons, one an employe and the other a stranger, were using the tracks alike and for the same purpose and were injured at the same time that one would be entitled to lookout duty and the other not.    Indeed, if employes, whether section hands or otherwise, habitually use the tracks in going to their work at this hour in large numbers, with the knowledge and acquiescence of the company, no good reason can be assigned why it would not anticipate their presence or why they should not be entitled to the same protection as other licensees who are strangers, and such is the rule in yards and other congested centers used by a large number of employes.    We conclude that the evidence as to the number of persons including employes using the tracks at this hour of the morning was properly admitted. It follows that there was sufficient evidence to submit to the jury the question as to the habitual use of the tracks at this point by the general public in such numbers as to require the trainmen to anticipate their presence on the tracks, and as to whether a proper lookout was main-

tained and signals given. Unquestionably intestate was killed by the engine, but it is urged that no eye-witness for the plaintiff testified and that it is a mere matter of conjecture as to how or for what purpose intestate went upon the tracks, but the court will not presume that he was guilty of contributory negligence, and this was an issue to be submitted to the jury, hence the peremptory cannot be sustained on this ground.

But it is insisted that the court should have given a peremptory instruction at the close of all the testimony as Utz testified positively that the intestate saw the approaching train and with knowledge of its approach deliberately went upon the track in front of it, practically committing suicide, and that he is not contradicted by any eye-witness. If not contradicted or impeached in any other way this point is well taken. Age's Admr. v. L. & N. R. R. Co., 148 Ky. 219; Sinclair's Admr. v. I. C. R. R., 129 Ky. 828; L. & N. R. R. Co. v. Meader's Admr., 176 Ky. 765. But Utz is contradicted in several material matters and circumstances. Thus, of all the witnesses introduced he alone testifies to seeing any coal at the sack or place of injury; he saw no dinner pail; he heard a second signal given when the engine was within fifty yards of the intestate, although the engineer and fireman testified that only one signal was given, and that was 350 yards north of that place; he states that it was too dark for him to see a man on the front of the engine, but that it was light enough for intestate to pick up coal, and it cannot be said that his evidence is unimpeached, hence it is not conclusive.

However, there is no evidence that the trainmen discovered the intestate's peril before his injury, and the court erred in giving an instruction authorizing a recovery for plaintiff if his peril was discovered by such agents in time to avoid injury to him. For this reason the case must be reversed. Again, the trainmen owed the intestate no duty if he was picking up coal on the tracks instead of using them as a walkway, nor would it be liable if he, with the knowledge of the train's approach, went upon the track in front of the engine, and for the reasons indicated above these defenses should be submitted in appropriate instructions similar to instruction No. 3 offered by appellant.

In the first instruction the words "in such large numbers" should follow the phrase "was used by the

-public," and precede the words, "at and before the time of said Philpot's injury and death."

Intestate's wife testified as a witness and complaint is made of this, but as there was no objection to the evidence it cannot be considered. It was improper for the court to admit proof of the membership of intestate's family, as it was to permit witnesses to testify that appellant's employes must have known of the use of the tracks or to testify as to the number of men employed in the shops at Corbin, aside from those using the tracks as above indicated, or as to the fact that witness did not see any lookout from the cab of the engine at the time it passed him one-half mile distant, or as to whether a sign had been put up at the point of the accident warning people to keep off the track, and in another trial such evidence will be excluded. Other matters are urged which we do not deem material and which will not be considered.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.