## Chesapeake & Ohio Railway Company v. Owens' Administrator.

(Decided, January 21, 1927.)

### Appeal from Floyd Circuit Court.

1. Railroads—Railroad's Negligence as to Pedestrian Using Track in Customary Manner Held for Jury.—In action against railway for killing deceased on company's tracks, in locality where engineer was required to keep lookout, issue of negligence held for jury; it being inferred deceased was using track in customary manner at time of accident.

2. Negligence—Negligence May be Inferred from Evidence.—While negligence is not presumed, it may be inferred from evidence.

3. Negligence—Where Evidence is Equally Consistent with no Negligence or Negligence, Case should be Withdrawn from Jury.—Where, in action for injuries, evidence is produced which is equally consistent with "negligence" or "no negligence," case should be withdrawn from jury.

BROWNING & REED, KIRK, KIRK & WELLS and COMBS & COMBS for appellant.

JOSEPH D. HARKINS and SMITH & CLARKE for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Appellee, the administrator of Jeff Owens, deceased, brought this action against the appellant to recover for the alleged wrongful death of his decedent.  On the trial he secured a verdict in the sum of $1,750, and from the judgment entered thereon the appellant appeals.

The sole ground relied upon for reversal is that the appellant's motion for a peremptory instruction, made at the close of the whole case, should have been sustained. The facts are these:

The McKinney Steel Company operates a coal mine on Greasy creek in Pike county. The camp of this mine is located in a narrow valley through which the creek runs. The creek separates the camp into two parts, known as the upper and lower camps. The miners' houses are about equally divided between the two portions of the camp. The commissary, power plant, post office, railroad station, and other buildings are located in the upper camp. The public road from the lower camp to the upper camp at the time of the death of Jeff Owens was a dirt road, and there was no bridge where it crossed Greasy creek. The appellant operates a branch line running from a station on its main line known as Sutton up the valley of Greasy creek to this mining camp. In bringing the passenger trains up this branch line, it was customary for the engine to pull the train in reversed position—that is, with the tender in front—and it was being so operated at the time Jeff Owens was killed. It is conceded that the railroad track of the appellant between the lower and upper camps was used in such numbers by the employees of the McKinney Steel Company in going to and fro between the upper and lower camps as to impose upon the appellant a lookout duty between such points. The railroad is double-tracked between the upper and lower camps and possibly beyond. As the track leaves the lower camp and approaches the upper camp, there is a slight curve, but the track is straight for a distance of over 600 feet before it reaches the station. The tracks run parallel to Greasy creek; the track next to the creek being a storage track usually occupied by loaded coal cars, so that the miners in using the tracks of the appellant were compelled to use the main track.

The foregoing facts are undisputed. The evidence of the appellee, coupled with the admissions in the pleadings, supplemented these facts thus: The appellee's decedent at the time of his death was on the track of the appellant, and was killed by being run over by a train of the appellant. This train was a passenger train bound for the upper camp, with its engine in reverse position. It arrived at the station about 4:30 in the afternoon of December 22, 1922. Although it was then dusk and difficult to recognize objects without a light, there was no headlight or other light on the rear of the tender, and no signals of any kind were given by this train from the lower camp to the station.

Mrs. Linda Bartley, one of appellee's witnesses, testified that she was standing on her porch just about opposite the station, and noticed an object being rolled along between the two trucks of the tender as the train came into the station. She asked two little boys to go over and see what it was. This they did, but on getting to the tender and recognizing the object they fled. As the train started on its return trip to the main line, she saw this object dragged for a little distance by the tender, when it finally was released from the trucks. It was then discovered to be the body of the appellee's decedent.

Joe Branham, who was another witness for the appellee, and who was standing on the station platform, observed the object as it came out from between the trucks of the tender. He thought at first that it was the body of a dog which he supposed had been killed by the train. He called to the crowd, and they all went down to see it. They too discovered that it was the body of appellee's decedent. The body was badly mutilated, and an investigation disclosed that blood and flesh were scattered along the tracks of appellant for a distance of some 600 feet from the spot where the body was finally dislodged from the tender. The heart of the body was found about 400 feet away from where the body was picked up. The testimony of the witnesses indicated that the decedent had been but recently killed.

The appellant's testimony tended to establish that there was a headlight burning on the rear of the tender; that the bell, automatic in operation, was being continuously rung for a considerable distance before the train came into the lower camp, and from there on up to the station; that the engineer and fireman were keeping a lookout; and that neither of them saw the decedent on the track. Indeed, they did not know that they had killed any one until they received a telegram after they had gone about 36 miles away from the camp. This is all the evidence produced bearing on the essential cause of this controversy.

Appellant insists that, on these facts, it was entitled to a peremptory instruction under the well established doctrine that where the evidence is equally consistent with either "negligence" or "no negligence," the court should not submit the case to the jury. While it is true that negligence is not to be presumed, it may be inferred

from the evidence. Here the appellant by its pleadings admitted that appellee's decedent was on its tracks and was killed by its train. It concedes that the place where the physical evidence indisputably establishes Jeff Owens was killed was a place where it owed a lookout duty to those using the tracks as a passway. The concession in its pleadings that Jeff Owens was on the track and was struck and killed by its train effectually contradicts the testimony of the engineer and fireman that they were keeping a lookout, for, had they been doing so, it is hard to see why they would not have seen the deceased. Owens was a miner who lived in the lower camp. The mines had shut down work about 3:30. This accident happened an hour later. In the absence of some proof that Owens was using the track in an abnormal manner, for example, using it to sit upon, the fair inference is that he was using it as people of the community in which he lived and of whom he was one did; that is, in the ordinary and usual way of a passway. As said in the case of L. & N. R. Co. v. Philpot's Admr., 215 Ky. 682, 286 S. W. 1078:

"Unquestionably intestate was killed by the engine, but it is urged that no eye-witness for the plaintiff testified, and that it is a mere matter of conjecture, as to how or for what purpose intestate went upon the tracks, but the court will not presume that he was guilty of contributory negligence, and this was an issue to be submitted to the jury, hence the peremptory cannot be sustained on this ground."

Human beings are presumed to do the ordinary and natural thing. That they did the contrary must be shown by some proof. There was none here, and so the inference is that Owens, a miner, was using the tracks at the time of his death as did the other miners in that community; that is, as a passway in going to and fro between the upper and lower camps. There was abundant testimony on the question of "no headlight" and "no signals" to carry this case to the jury, and, as we have stated, appellant's admission as to Owens' presence on the tracks refutes the testimony of its engineer and fireman as to a lookout. This being so, this case comes within the rule of the cases of L. & N. R. Co. v. Taylor's Admx., 158 Ky. 633; 166 S. W. 199, and Southern Ry. Co. v. Caplinger's Admr., 151 Ky. 749, 152 S. W. 947, 49

L. R. A. (N. S.) 660. and is clearly distinguishable from the cases of L. & N. R. Co. v. Stidham's Admx., 187 Ky. 139, 218 S. W. 460, Sutton's Admr. v. L. & N. R. Co., 168 Ky. 81, 181 S. W. 938, and like cases, too numerous to catalogue here, but a partial list of which may be found in Davis, Director General v. Burns' Admx., 207 Ky. 703, 269 S. W. 763.

In the Taylor case, Taylor, a section hand, was ordered to go down the track for the purpose of flagging trains coming from the north. Under the facts of that case, we held he had a right to assume that no trains would come up on him from the south. He was seen walking down the track. A short while thereafter, a train coming from the south also went down this track. Taylor's body was found on the track after the train had passed, and the physical facts showed that he had been struck while on the track. The engineer claimed he was keeping a lookout but never saw the deceased on the track. This court, however, said that the physical facts showed that the engineer was not keeping the lookout he claimed. On these facts, the court said the case was properly submitted to the jury. In the Caplinger case, Caplinger was seen walking down beside a track. He was seen to step towards the track, but smoke from a passing engine hid him from further view. A freight car, making a flying switch, passed the place toward which Caplinger was going. Fifteen minutes thereafter, his body was found on the track. There was evidence of "no lookout" and "no light" on the freight car. The track was on a public street of the city of Louisville. It was held that this case too properly went to the jury.

In both of these cases, just as in the case before us, there was evidence to establish no lookout, no signals, no headlights. In the two cited cases there was evidence to show that the deceased were seen walking down the track, where a lookout duty was owed them, but a short time before they were run over by the trains. Here it is admitted that Owens was on the track. In the cited cases, the court upheld a submission to the jury which could only have been done on the theory that the inference was that the deceased continued to use the tracks in the normal way up to the moment they were killed. The same inference should be applied to Owens.

On the other hand, in the Stidham case, the deceased was killed at a point where no lookout duty was due him, nor did the evidence show that he was *on* the tracks before being struck by the train, or that he was even killed by the train.   Both of these latter facts are admitted in this case.   In the Sutton case, the railroad owed Sutton no lookout duty unless, perhaps, he was on its tracks in the performance of his duties in connection with the the rebuilding of a bridge of the railroad. There was no evidence to that effect nor any evidence that he was even killed by the train.

It will thus be seen that in these two last mentioned cases, there was no evidence which was not as consistent with "no negligence" as with "negligence," and so the cases were properly not submitted to the jury.   But the elements they lacked are supplied here by the admissions in the pleadings and the fair inferences to be drawn from them.   In the same fashion we might distinguish all the cases upon which appellant relies, but it would consume too much time and space.   Suffice it to say, they may all be assimilated to the Sutton and Stidham cases and differentiated from the Taylor and Caplinger cases.   This case falls in the latter category and not in the former.

It results, therefore, that appellant's contention that it was entitled to a peremptory instruction is without merit, and the lower court properly submitted this case to the jury.

Its judgment is affirmed.

Whole court sitting.