## Louisville & Nashville Railroad Company v. Napier's Administrator.

(Decided May 31, 1929.)

ASHBY M. WARREN, JESSE MORGAN and C. S. LANDRUM for appellant.

WOOTTON & WOOTON and W. C. EVERSOLE for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

In this action to recover damages for the death of Robert Napier, the appellee, who was the plaintiff below, recovered a judgment for $10,000, and the defendant has appealed.

The body of Robert Napier was found upon appellant's tracks about 6 o'clock in the morning of December 22, 1922, at a point about 200 yards from a public road which crosses the railroad tracks near, or just within, the corporate limits of the city of Hazard. The body was badly mangled, and had been dragged a distance of

50 feet. A train composed of an engine and a number of coal cars left Hazard about 3:45 a. m., on December 22, 1922, and went to Hardburly, passing on the way the point where Napier's body was found. There is proof that blood was found on the pilot of the engine when the train returned to Hazard shortly after 6 a. m.

It is plaintiff's theory that his intestate was struck and killed by this train while he was walking along the railroad track at or near a public crossing, and that the train did not give any signals of its approach to the crossing, and in this respect the employees in charge of it were guilty of actionable negligence. There was absolutely no evidence to support this theory. An effort was made to show that at the point where the body was found, the railroad tracks were used by such a number of persons as to make the users licensees. Two or three witnesses testified that two or three hundred people used the railroad tracks at and near the crossing, but none of them specified any number that used the tracks at the point where the body was found. Nor did any witness undertake to state that the tracks at this point were used by any number of persons about the hour of 4 o'clock in the morning. Even had the deceased been struck by the train at the crossing, there is no evidence that the employees in charge of the train failed to keep a lookout or to give the customary signals. One witness, Ed. Ivey, who lived at Allais, a station near the place where the body was found, testified that he was awake about 2 or 3 o'clock in the morning and heard a train, but did not hear it whistle for Allias. On cross-examination he admitted that he heard at least six blasts of the whistle, and that these were blown at about the place where the body was found.

It was shown that the deceased was in an intoxicated condition earlier in the night, and that he left the home of Tony Mercheser about midnight. Deceased was a deputy sheriff, and his duties were to patrol the mining camp of Allais during the night. About 3 o'clock in the morning a number of shots were fired in the camp, and one witness testified that he examined the body and found a hole in the head about the size of a lead pencil and another in the leg near the knee. So far as this record discloses, the deceased may have been walking along the railroad track when he was struck and killed, or he may have been asleep on the track, or he may have been riding

or attempting to get on some part of the train and have fallen from it, or he may have been murdered and his body placed on the track.

Stewart's Adm'r v. Nashville, Chattanooga & St. Louis R. Co., 146 Ky. 127, 142 S. W. 232, in which the facts were stronger for the plaintiff than are the facts in this case, the court said: "In cases like this, no presumption is to be indulged in against the deceased, nor is it required that the plaintiff who is seeking to recover damages for his death shall show that he was free from blame. Warren v. Jeunesse (Ky.) 122 S. W. 862; Cumberland Telephone & Telegraph Co. v. Graves (Ky.) 104 S. W. 356; Lexington & Carter County Mining Co. v. Stephens, 104 Ky. 502 (47 S. W. 321). But in all cases of this character where it is sought to recover damages for negligence or wrongful act, there must be some evidence to show that the deceased lost his life through the negligence of the defendant, and this evidence must be sufficient to charge the defendant with a breach of duty. A recovery cannot be had on mere surmises or speculation as to how the injury that is complained of happened, nor will it be presumed that the defendant was guilty of actionable negligence. If the injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, then the well settled rule is that a recovery cannot be had."

In the recently decided case of Chesapeake & Ohio R. Co. v. Preston's Adm'x, 228 Ky. 572, 15 S. W. (2d) 427, in which the facts are strikingly similar to those in the instant case, the judgment was reversed for failure of the trial court to give a peremptory instruction to find for the railroad company. In the opinion in that case will be found a collection of the authorities in which it has been held that the mere fact that a person has been found dead on a railroad track, whether it be at or near a public crossing, is not in itself sufficient to authorize a submission of the case to the jury. From what we have said it follows that the trial court erred in overruling defendant's motion for a directed verdict.

But the plaintiff is confronted by a more serious question. The time for filing the petition expired on December 22, 1923. The petition bears this indorsement: "Filed, tax paid, one summons and one copy issued March 11, 1924. Z. T. Duff, Clerk." The words and figures, "December 20, 1923," also appears on the petition, but these have been stricken out. When the ques-

tion of limitations was raised in the lower court, proof was heard by the court, and plaintiff testified that he delivered the petition to Lee Daniels in the circuit clerk's office on December 20, 1923. Lee Daniels had been deputy circuit clerk, but he had resigned, and his resignation had been accepted in September, 1923. However, he testified that he continued to do some work in the circuit clerk's office, and that the petition was handed to him by the plaintiff, and that he indorsed thereon, "December 20, 1923." He issued no summons, and it is conclusively shown that no summons was issued until March 11, 1924, and that no filing tax was paid on December 20, 1923, but was paid on March 11, 1924. Conceding that the petition was delivered to the clerk of the Perry circuit court on December 20, 1923, this did not stop the running of limitations.

In ruling on a similar question in Casey v. Newport Rolling Mill Co., 156 Ky. 623, 161 S. W. 528, this court said: "In the present case no summons was actually issued against defendant, the Newport Rolling Mill Company, until after the expiration of a year from the time plaintiff's cause of action accrued. The question sharply presented, then, is this: Is a mere direction to the clerk to issue a summons, though, as a matter of fact, no summons is ever actually issued against the defendant sought to be charged, a sufficient compliance with the provisions of the statute and code? It may be conceded that under the authorities relied on by plaintiff if the summons be actually issued, though a clerical mistake be made by the clerk, the action will be deemed to have commenced as against the defendant against whom summons was issued. But the cases relied on do not sustain the contention that the mere direction to the clerk to issue summons is a commencement of the action against a defendant who, as a matter of fact, is not summoned at all. Indeed, there is a wide difference between directing a summons to be issued and actually causing it to be issued. In the one case no summons may ever issue at all; in the other case it must have been issued. If the broad rule contended for by plaintiff were adopted, it would lead to endless confusion. The commencement of an action would be determined by parol evidence instead of the actual issuance of the summons. Parties having the right to rely on the record, showing that no summons had been issued, would be met with the contention that

the clerk had been requested to issue summons, thus making important property rights depend on an issue of veracity between the clerk and the litigant or his attorney. In our opinion, such was not the purpose of the law-making power. The statute and code make it clear that an action is commenced by the issuance of the summons, and not by a request to have the summons issued."

It follows that plaintiff's cause of action was barred by the statute of limitations, and his petition should have been dismissed.

Judgment reversed.