## Goodman's Adm'x v. Chesapeake & O. Ry. Co.

(Decided Jan. 16, 1934.)

EDWARD L. ALLEN for appellant.
BROWNING & DAVIS and COMBS & COMBS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

There was a verdict for $3,000 upon the first trial of appellant's suit to recover damages of the appellee for the death of Robert Goodman. The defendant's motion for a new trial was sustained, and upon the second trial, at the conclusion of the plaintiff's evidence, a peremptory instruction for the defendant was given, with the resulting verdict. The plaintiff's motion to substitute the first verdict for the last and render judgment accordingly was overruled, and a judgment was entered dismissing the petition. The proper procedure was observed, and both records have been brought to us for review of the whole case.

Appellee's railroad runs in a general north and south direction along the west side of Levisa fork of Big Sandy river. But in local railroad parlance it is designated as east and west, and that designation was used in the record and will be carried into the opinion.

Dwale and Allen are incorporated villages in Johnson county, each having a population of about 350. The town limits meet, but the railway stations are perhaps a mile apart. The river is immediately on the north side of the double track and the hillside on the south. On that side, more or less paralleling the railroad, is a county road connecting the two towns. It seems that at some points this road touches the railroad right of way, but it follows the natural contours of the mountains. The railroad being the shorter way, it is used a great deal by pedestrians and sometimes by horseback riders. We think it is established that during the daytime the use is sufficient to require a lookout duty on the part of the trainmen. It is very doubtful if the proof was sufficient to call for that duty between midnight and daylight, but that issue seems to be immaterial to the decision.

About 2 o'clock on the night that Goodman met his death, in October, 1926, he appeared at the home of Lum Porter and later at his father's home in an intoxicated condition and in possession of a bottle of whisky. He was riding a mule. These places are not far from where his body was found on the railroad later in the morning. About 3 o'clock, Crum, a railroad pumper, and his son, walking on the west-bound track toward Allen, saw a bulk over on the outside of the east-bound track, which was apparently the deceased man. He was not identified because it was then dark and foggy and the Crums paid no attention to him. Shortly after this two east-bound trains, running about twenty minutes apart, came along. About daylight the younger Crum went back toward Dwale and discovered the body of a man on the east-bound track, and promptly reported that fact. The evidence tends to show that, a few feet east of where the Crums had seen the bulky object or form of the man, the deceased's leg had been cut off below the knee by the wheel of a train, and perhaps 75 feet further east his body had been struck and cut to pieces. At this place the railroad curves, the east-bound track being on the inside. The body was found about 400 feet east of the crossing of a street or public road

in Dwale, and two witnesses testified that the engineer of an east-bound train could see an object about that distance ahead of him. These witnesses, however, merely expressed an opinion with little, if any, qualification to do so. A map produced by the railway company on the second trial shows that the point where the body was found was perhaps 700 feet from the crossing, and the line of vision of the engineer was 675 feet. Appellant's counsel indicate that there was a path or roadway extending across the track from the county road, which comes up to the side of the right of way near the place where the body was found. But we gather from the evidence that the traveled way was longitudinal and had been made by the trespassers or licensees going up and down the railroad. Perhaps there was a short path connecting the road and railroad. It is appellant's view that the man had been struck by both of the east-bound trains. That is the conclusion drawn from the conditions, but there was no evidence to that effect other than those conditions. The tracks of a mule showed that he had been running on and off the railroad and "skiving" about. There was no indication of the mule having been struck.

Upon the second trial only the plaintiff introduced the fireman and engineer of one of the trains believed to have struck the man. The fireman testified that because he was outside of the curve he could not in any event have seen the man, but that he did notice the mule without a rider on the side of the railway close to the public crossing. The engineer testified that he was keeping a lookout, but did not see and could not have seen the man, because the rays of the headlight, on account of the curve, were not cast upon or about the spot where the body was apparently struck by the train, and also because of the heavy fog. He had no knowledge of striking him or of having struck anything at the time or place, but learned the next morning that the body of the deceased had been found there.

Appellant relies upon the cases of Louisville & N. Railroad Company v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078; Chesapeake & O. Railway Company v. Owens' Adm'r, 217 Ky. 707, 290 S. W. 478, and Louisville & N. Railroad Company v. Slusher's Adm'r, 217 Ky. 738, 290 S. W. 677.

The Philpot Case was reversed, but the evidence

was held sufficient to justify a submission to the jury. The situation is quite similar, but the case is different, for it was there established with certainty that the man was killed by a locomotive. The habitual use of the railroad at the time and place was enough to convert a trespasser into a licensee, and also there was sufficient evidence to submit the issue as to whether the lookout duty had been observed and proper signals given, there being eyewitnesses to the actual occurrences and close circumstances.

In the Owens Case it was admitted that the deceased was killed by the train and a lookout duty was conceded. There was evidence that there were no signals when there should have been, no headlight on the rear of the locomotive which was backing, and no lookout observed. In the absence of some evidence that the deceased was using the track in an abnormal manner, as, for example, using it to sit upon, it was held fairly inferable that he was using it in the usual and ordinary way of a passway.

In the Slusher Case there was sufficient evidence for the jury to reach the conclusion that no headlight was burning on the motorcar which struck the man, and those operating the car testified that they had discovered him lying on the track, but not within time to stop the car and avoid striking him. There also was evidence that the deceased had been struck at or on a public crossing.

We think these cases are distinguishable on the facts. The things which were held sufficient to carry them to the jury are absent here. We have only the condition of the body showing unmistakably that it was struck by a train, but whether Goodman was then alive or dead is conjectural. How he came to be upon the track is left to surmise. Conceding that there was such habitual use at the time of night to convert the railroad into a passway, the evidence tends to show that the deceased was not using it as a way of travel, but rather that he was asleep or in a drunken stupor, or maybe stunned from a fall from his mule. It was not shown on the first trial that the trainmen failed to observe the lookout duty. On the second trial the evidence was positive that they were observing it while passing over this place.

The facts bring the case within those opinions which held that a peremptory instruction for the railway com-

pany was proper because it was not proven that the life was lost through any negligence on the part of the company. Their particular facts and the reasons for the decisions need not be repeated. See Stuart's Adm'r v. N., C. & St. L. R. Co., 146 Ky. 127, 142 S. W. 232; Caldwell's Adm'r v. C. & O. R. Co., 155 Ky. 609, 160 S. W. 158; Louisville & N. Railroad Company v. Smith's Adm'r, 186 Ky. 32, 216 S. W. 1063; Bevin's Adm'r v. C. & O. Railway Company, 190 Ky. 501, 227 S. W. 794; Davis v. Crawford's Adm'x, 203 Ky. 71, 261 S. W. 835; Chesapeake & O. Railway Company v. Goodman's Adm'x, 218 Ky. 117, 290 S. W. 1054; Chesapeake & O. Railway Company v. Preston's Adm'x, 228 Ky. 572, 15 S. W. (2d) 427; Louisville & N. Railroad Company v. Napier's Adm'r, 230 Ky. 323, 19 S. W. (2d) 997.

Wherefore the judgment is affirmed.