# Chesapeake & O. Ry. Co. v. Butcher's Adm'r.

(Decided Feb. 28, 1936.)

LeWRIGHT BROWNING and KIRK & WELLS for appellant.

FRED MEADE and WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Johnson circuit court based on the verdict of a jury in the sum of $3,000 in favor of the appellee, Son Butcher, administrator of the estate of Ray Butcher, deceased, against the appellant, Chesapeake & Ohio Railway Company, arising out of the alleged negligent killing of Ray Butcher.

Decedent was a young man, 17 years of age. About 3 a. m. on Sunday, May 28, 1933, he was found unconscious and in a dying condition, lying between the rails of appellant's main-line track between the stations of Whitehouse and Offutt on the Big Sandy Division of appellant's railroad in Johnson county.

He was lying on his back near the left rail as one approached Offutt. One of his arms had been severed and was lying outside the right rail. His head ·was toward Offutt. He had received various other injuries about his head and body.

An eastbound freight train, No. 94, passed over the track at the point of the alleged accident somewhere near 3 a. m., as did also westbound freight train No. 95. The trains evidently passed each other at the siding in the neighborhood of Whitehouse or, at any rate, at some place near to where Butcher was found. The head brakeman on No. 94 testified that, after leaving Whitehouse, he was standing on the gangway of the engine behind the fireman. He saw an object lying between the rails at about the place where decedent was found when the engine was within about 30 feet of it. He only got a glance at it, as the train was going about 35 miles per hour, and he could not identify it as a man. The fireman saw it about the same time and asked what it was. As neither the brakeman nor the fireman knew, the train proceeded on to Paintsville, where the brakeman reported to the yardmaster that he had seen something on the track just below Offutt.

The yardmaster ordered a shifter engine and caboose with a crew to go down and investigate and went along himself. When they reached the point of the alleged accident, they found decedent in the situation described above. The engineer on the shifter engine testified that, instead of immediately removing the body, apparently with a purpose to have some one not connected with the railroad see and identify the decedent, they proceeded on down the track over decedent's body to the home of John and Nath Gambill, picked them up and returned. This most extraordinary conduct had no causal connection with the accident or injuries, as all the witnesses say, without dispute, that there was ample clearance between the engine and caboose as they passed over the decedent. It was not claimed at the trial that the shifter engine touched the body.

The presence of Butcher's body upon the track and the fact that his arm was cut off demonstrate that he must have been run over by some train, but whether he thus received his fatal injuries is a more serious question. Assuming that the object seen by the

brakeman and fireman on No. 94 was the body of the decedent, we are still left to conjecture as to how he happened to be upon the track and whether his death was the proximate result of being run over by No. 94 or was the result of injuries suffered from some other cause. It is entirely conceivable from the evidence that decedent was struck by some train which passed the point before No. 94, or, in view of the fact that it was shown that decedent had been drinking, it is entirely possible that he may have fallen on the track and injured himself. One witness testified that she heard a "gang of boys" swearing and making a considerable amount of noise at about the point of the accident some time before midnight on the night in question. It might be deduced from this that decedent had been assaulted or had been in a fight and his body left on the track. It is clear that one can but guess as to the cause or manner of the decedent's death and that the case falls within the settled rule that, where the evidence is equally consistent with the absence of negligence as with its existence as the proximate cause of an injury, the plaintiff has failed to make out a case for submission to a jury. Chesapeake & Ohio R. Co. v. Preston's Adm'x, 228 Ky. 572, 15 S. W. (2d) 427; Louisville & N. R. Co. v. Napier's Adm'r, 230 Ky. 323, 19 S. W. (2d) 997; Goodman's Adm'x v. Chesapeake &. Ohio R. Co., 252 Ky. 366, 67 S. W. (2d) 469.

It is claimed by appellee, however, that there is evidence of negligence on the part of the railway company in that there was a failure on the part of those in charge of No. 94 to sound its whistle at the crossing some 600 feet west of the point of the accident, and that there was also a failure to maintain a proper lookout. These are the specific acts of negligence charged in the petition as amended. There is evidence to the effect that no signals of the approach of the train to the crossing were given, but there is nothing from which a jury could reasonably infer that this failure, if it existed, was the proximate cause of the injury to the decedent. Furthermore, if we were to sustain plaintiff's cause of action on the theory that the failure to signal was the proximate cause of the accident, a necessary assumption would be that the decedent could have removed himself from the track on hearing the signals—in other words, that the signals would have been effective. Opposed to this, we have

the testimony of the brakeman on No. 94 that, whatever it was that he saw, it was lying between the rails. Certainly, we could not assume that decedent was lying between the rails in full possession of his faculties. Obviously, we are forced into speculation as to what *might* have occurred if the whistle had been blown or what *might* have been the true facts if the object that the brakeman saw was not decedent's body. This falls far short of showing that the failure to give the statutory signals for the crossing was the proximate cause of the accident.

So far as the lookout duty is concerned, it is thoroughly established that a person sitting or lying on a railroad track is a trespasser to whom no duty is owed until his peril is actually discovered. Chesapeake & Ohio R. Co. v. Prater's Adm'x, 251 Ky. 84, 64 S. W. (2d) 463; Bevin's Adm'r v. Chesapeake & Ohio R. Co., 190 Ky. 501, 227 S. W. 794. There was testimony to the effect that numerous persons used the tracks as a passway at this point, but nothing of substance to show that people were in the habit of so using it at the hour when it is claimed that this accident happened. If decedent was lying down on the tracks, there was no duty to anticipate his presence in any event. Assuming that decedent was standing up, it is plain that there was no duty to maintain a lookout at the point in question at 3 o'clock in the morning. Louisville & Nashville R. Co. v. Bays' Adm'r, 142 Ky. 400, 134 S. W. 450, 34 L. R. A. (N. S.) 678; Southern R. Co. v. Sanders, 145 Ky. 679, 141 S. W. 77; Goodman's Adm'x v. Chesapeake & Ohio R. Co., supra.

Clearly, there was not enough evidence to justify the submission of the case to the jury on either the theory that decedent met his death as a result of the negligence of the railroad company or that the railroad company was guilty of any negligence which could, under the circumstances, be considered as causing the accident.

Judgment reversed.