## Louisville & Nashville R. Co. v. Mahan.

October 25, 1949.

J. P. Hamilton, H. T. Lively, J. L. Lenhan and Jarvis & Ross for appellant.

Meredith, Iler & Logan for appellee.

JUDGE HELM—Reversing.

Appellee alleged that he was injured at Belton by one of appellant's trains on the night of July 27, 1946.

At the second trial of the case, the jury awarded him a verdict of $1,000. Appellant appeals from the judgment entered on that verdict.

Appellee plead: "* * * The defendant while engaged in the business of running and operating a train of cars traveling in a northerly direction and pushed by and attached to defendant's engine or locomotive on its line of railway which extends from Owensboro, Kentucky, to Russellville, Kentucky, and within the limits of the town of Belton, Kentucky, and at a place on the tracks between the public vehicular crossing and the defendant's depot or station where the public generally and habitually were, and are accustomed to travel and to cross the said railroad tracks, and at a place near a. foot path which crosses the tracks and is and was used by the general public and patrons of defendant's said depot or station as a walkway with the knowledge and acquiescence of those in charge of defendant's facilities in and around Belton, defendant and its servants and agents then in charge of and operating its said train of cars for defendant, negligently and carelessly and with gross negligence and carelessness pushed its train of cars against and upon and over this plaintiff, inflicting great injury to his body, * * *."

The village of Belton, in Muhlenberg County, is a small unincorporated coal mining and farming community. Appellant's Russellville-Owensboro railroad passes through Belton. A state highway runs parallel to the railroad at a distance of about two city blocks to the west. A country road, referred to as the Rochester road, crosses the railroad 250 or 300 feet south of the depot. An old roadway—a dirt road—runs parallel to the railroad and just west of it. Three houses face this roadway. Appellee lives in one of these houses.

About 9 o'clock of July 27, 1946, appellee was found lying beside appellant's track, on the east of it, about 155 feet south of the Belton station. F. O. White and J. S. Brown, conductor and brakeman of a coal train, were riding on the head car of a cut of 18 cars being backed into the Belton station for the purpose of picking up waybills for coal from a mine. The cut of cars was being backed down from Twin Tunnels at three to four miles per hour. The conductor and brakeman were standing inside the car with their lanterns on the outside

of the front car, and had "a piece of waste * * * what we call waste out of box cars, on the draw-bar burning." They were keeping a lookout ahead; they did not see appellant walking across the track. As they neared the station they noticed an object by the track. When the cars came to a stop at the station, the conductor went to the station for his waybills, and Brown, the brakeman, went to investigate the object which they had noticed beside the track. Brown found appellee lying beside the track, outside the rail. He called the conductor and Mohon, the station agent. They asked appellee if he had been struck by the train, and he said no that he had been "shot and robbed." Appellee didn't know what struck him. They helped him to his home, where he was put to bed by Mohon and some of the neighbors. Dr. Harralson, of Central City, was called to see him. The doctor came the next morning and sent appellee to a hospital.

Appellant contends: (1) That the petition does not state a cause of action, and that its demurrer should have been sustained; (2) the court erred in refusing to peremptorily instruct the jury to find for appellant, and (3) the instructions were erroneous.

Appellant filed a general demurrer to appellee's petition, but we find no order sustaining or overruling this demurrer. Appellant urges that its motion for a directed verdict should have been sustained.

It is difficult from the evidence to tell how many people live in the community of Belton. It has a railroad station, a post office, a church, three stores, a feed mill and two coal mines. The coal mines are located some distance from the station. Most of the people in the village live along the highway some distance to the west and north of the railroad tracks.

Bill Finn stated that there were several pathways crossing the railroad between the depot and the grade crossing. Asked to estimate how "many or few people use those pathways * * * in the course of a day," he answered, "I wouldn't have much idea. I imagine 75 or more, backwards and forwards." Neva Baines, testifying for appellee, asked about the paths across the tracks, stated "There are two or three little paths across there." Asked as to how many people use them,

the witness stated, " I guess 50 people a day cross there." T. A. Mohon, testifying for appellant, stated that Mahan was "partly under the influence of whiskey." Asked about the paths across the track and whether Mahan was near either of the paths, he stated he was "about 30 feet south of one of them and about 60 feet from the other one."

Five pictures were filed with the evidence, showing the location of the Belton station and surrounding territory. From these pictures it is evident that this is not a populous community. The pictures indicate that, except for a few houses near the station, the land about the station is open country.

Appellee stated that he left his home and started to the Taylor home across the railroad to see Bill Finn; that he walked along the dirt road in front of his home "apiece" and crossed the railroad about 25 steps north of the crossing; he heard the train chugging down below him; he did not see any train moving; he thought the train was moving on another track; he had lived in this house for sixteen years and was familiar with the movement of appellant's trains at this place; as he crossed the railroad track, something struck him; he didn't know anything until the next morning about 6 o'clock. He is sixty-one years of age, and had previously been employed as a timberman for the Shearn Coal Company.

Appellee contends that this was a congested area; that the track at the point where appellee was injured was used by a large number of people, and that the appellant was under duty to anticipate his presence on the railroad track.

In Louisville & Nashville Railroad Company et al. v. Banks' Admr., 195 Ky. 804, 243 S. W. 1018, we said: "The determining factor in a case of this kind is not the habitual use of the track by the public. It may be habitually used by all the public that passed that way, but the number of persons so passing may be very small. Therefore, in order to convert trespassers into licensees, it is necessary that the track be habitually used by the public in such large numbers that the presence of persons on the track should be anticipated."

In Louisville & N. R. Co. v. Bush's Adm'x, 285 Ky.

645, 148 S. W. 2d 1050, 1051, we said: "All of our prior cases upholding and sustaining the right of action upon the ground relied on by plaintiff not only say that there must be more than one hundred and fifty persons per day who use the track for pedestrian travel, but also that the place must be in a thickly settled community and that the travel must be upon the railroad track, or sufficiently near to it as to expose the traveler to danger from passing trains."

It appears that appellee was injured around 9 o'clock at night. In Chesapeake & O. Ry. Co. v. Butcher's Adm'r, 263 Ky. 45, 91 S. W. 2d 551, 552, we said: "There was testimony to the effect that numerous persons used the tracks as a passway at this point, but nothing of substance to show that people were in the habit of so using it at the hour when it is claimed that this accident happened."

In Louisville & N. R. Co. v. Adams' Adm'x, 303 Ky. 131, 197 S. W. 2d 93, a recent case, it appears that Adams was struck and killed by a train at Dortha, an unincorporated community; that there were 16 to 25 houses, a church and a store building, and two public crossings in the vicinity of Dortha. There was proof that the tracks were used as a walkway by 50 to 100 persons a day, sometimes more on special occasions. Under these facts, we held that the deceased was a trespasser to whom no lookout duty was owed. A number of cases are cited or summarized, with approval, including Louisville & N. R. Co. v. Bush's Adm'x, supra. See 16 Ky. Digest, Railroads, Key 398(1).

Here, Belton is shown to be an unincorporated village. The largest number of people shown to have been using appellant's track at or near the place where appellant was found is 75, the largest number shown to have been using the place at night is 15.

Under the above cases, it is clear that appellee failed to show that appellant's railroad tracks were used to such an extent as to convert trespassers into licensees and thereby impose upon appellant's employees the duty to anticipate their presence and use precautions for their safety. That being true, the testimony was not sufficient to take the case to the jury. It follows that the trial court should have sustained appellant's

motion for a directed verdict. All other questions are reserved.

The judgment of the trial court is reversed with directions for proceedings not inconsistent with this opinion.